STANLEY • IOLA, LLP
MATTHEW J. ZEVIN, SBN: 170736
225 Broadway, Suite 1350
San Diego, CA 92101
Telephone:    (619) 235-5306
Facsimile:    (815) 377-8419

EMGE & ASSOCIATES
DEREK J. EMGE, SBN: 161105
225 Broadway, Suite 1350
San Diego, CA 92101
Telephone:    (619) 595-1400
Facsimile:    (619) 595-1480

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO S. HINOJOS, individually, and DARREN DROUIN and CHERYL LONG, individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>KOHL'S CORP., a Wisconsin Corporation; and KOHL'S DEPARTMENT STORES, INC., a Delaware Corporation,<br><br>                    Defendants. | CASE NO. CV10 7590 ODW(AGRx)<br><br>**REDACTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>DATE:      January 27, 2014<br>TIME:      1:30 p.m.<br>JUDGE:    Honorable Otis D. Wright II<br>CTRM:     11 |

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................. 1

II.   STATEMENT OF FACTS ................................................................ 2

    A.    Background ............................................................................ 2

    B.    Kohl's Maintains Uniform, Written Pricing Policies that Literally Ensure that the Company Will Violate the FAL .................. 2

    C.    Every Class Member Was Exposed to Kohl's Deceptive Practice ...... 5

    D.    Kohl's Does Not Care if Products Sell at Original or Regular Prices ..................................................................................... 5

    E.    Plaintiffs Were Victims of Kohl's Deceptive Pricing Practices ........... 6

    F.    Plaintiffs' Expert Can Use Kohl's Sales Data to Objectively Confirm Whether the Regular Price Was the Prevailing Market Price for Any Product During Any 90 Day Period .............................. 6

III.  ARGUMENT ................................................................................... 7

    A.    Rule 23(a)(1)'s Numerosity Requirement is Met ............................... 8

    B.    Plaintiffs' Claims Satisfy the Commonality Requirement of Rule 23(A)(2) and the Predominance Requirement of Rule 23(B)(3) .......... 9

        1.    The FAL Presents Common Questions that Predominate ........ 10

        2.    The CLRA Claim Presents Common Questions that Predominate ................................................................... 11

        3.    The UCL Claims Present Common Questions that Predominate ................................................................... 12

    C.    The Typicality Requirement of Rule 23(a)(3) is Met ......................... 17

    D.    Rules 23(a)(4) and 23(g)(1) Are Satisfied ....................................... 18

    E.    All of the Requirements of Rule 23(B)(3) Are Satisfied .................... 19

        1.    None of the Remedies Sought in This Case Will Defeat Predominance ............................................................... 20

        2.    Alternatively, the Court Can Certify a Liability Only Class ........................................................................... 22

        3.    A Class Action is Superior to Individual Actions ............... 23

IV.   CONCLUSION ............................................................................. 25

i

# TABLE OF AUTHORITIES

**CASES**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ................................ 20

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  __ U.S. __, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013) .................................... 9, 10

*Armour v. Network Assocs., Inc.*,
  171 F. Supp. 2d 1044 (N.D. Cal. 2001) ............................................................ 18

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001) ............................................................................. 18

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*,
  258 F.3d 578 (7th Cir. 2001) ....................................................................... 15, 16

*Barquis v. Merchants Collection Ass'n*,
  7 Cal. 3d 94, 101 Cal. Rptr. 745, 496 P.2d 817 (1972) .................................... 12

*Blue Cross of Ca., Inc. v. Superior Court*,
  180 Cal. App. 4th 1237, 102 Cal. Rptr. 3d 615 (2009) ..................................... 13

*Brazil v. Dell Inc.*,
  No. C-07-01700, 2010 WL 5387831 (N.D. Cal. Dec. 21, 2010) ............. 10, 11, 12

*Bruno v. Quten Research Inst., LLC*,
  280 F.R.D. 524 (C.D. Cal. 2011) ....................................................................... 7

*Carnegie v. Household Int'l, Inc.*,
  376 F.3d 656 (7th Cir. 2004) ............................................................................. 23

*Colgan v. Leatherman Tool Group., Inc.*,
  135 Cal. App. 4th 663, 38 Cal. Rptr. 3d 36 (2006) ...................................... 20, 21

*Erica P. John Fund, Inc., v. Halliburton Co.*,
  __U.S. __, 131 S. Ct. 2179, 180 L. Ed. 2d 24 (2011) ......................................... 9

*Farmers Ins. Exch. v. Superior Court*,
  2 Cal. 4th 377, 6 Cal. Rptr., 826 P.2d 730 (1992) ............................................ 13

*FTC v. Commerce Planet, Inc.*,
  878 F. Supp. 2d 1048 (C.D. Cal. 2012) ............................................................. 21

ii

*Gete v. I.N.S.*,
   121 F.3d 1285 (9th Cir. 1997)..................................................................23

*Gutierrez v. Wells Fargo Bank, NA*,
   704 F.3d 712 (9th Cir. 2012)....................................................................17

*Haddock v. Nationwide Fin. Serv., Inc.*,
   __ F.R.D. __, No. 3:01-cv-1552, 2013 WL 4782375
   (D. Conn. Sept. 6, 2013)..........................................................................22

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)..................................................................18

*Haynes v. Logan Furniture Mart, Inc.*,
   503 F.2d 1161 (7th Cir. 1974)..................................................................24

*Hurley v. Pechiney Plastic Packaging, Inc.*,
   No. C 05-05028 JSW, 2006 WL 708656 (N.D. Cal. Mar. 16, 2006)...............17

*In re Abbott Labs. Norvir Anti-Trust Litig.*,
   Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899
   (N.D. Cal. June 11, 2007)...........................................................................8

*In re Emulex Corp. Sec. Litig.*,
   210 F.R.D. 717 (C.D. Cal. 2002) .............................................................19

*In re Tobacco II Cases*,
   46 Cal. 4th 298, 93 Cal. Rptr. 3d 559, 207 P.3d 20 (2009)........................12, 20

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001) .............................................................19, 24

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
   571 F.3d 953 (9th Cir. 2009).....................................................................9

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   No. 10-4188, 2013 WL 3746205 (6th Cir. 2013)........................................22

*In re Worldcom Inc., Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003)...............................................................23

*Johns v. Bayer Corp.*,
   No. 09cv1935 AJB, 2013 WL 435201 (S.D. Cal. Feb. 1, 2013) ......................25

iii

*Johnson v. California*,
    543 U.S. 499, 125 S. Ct. 1141, 160 L. Ed. 2d 949 (2005)...................................18

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
    702 F.3d 364 (7th Cir. 2012) ...............................................................................22

*Keegan v. Am. Honda Motor Co., Inc.*,
    284 F.R.D. 504 (C.D. Cal. 2012) .........................................................................8

*Mahfood v. QVC, Inc.*,
    No. SACV 06-0659-AG, 2008 WL 5381088 (C.D. Cal. Sept. 22, 2008) .............11

*Maziarz v. Hous. Auth. of the Town of Vernon*,
    281 F.R.D. 71 (D. Conn. 2012) ...........................................................................22

*McKell v. Washington Mut., Inc.*,
    142 Cal. App. 4th 1457, 49 Cal. Rptr. 3d 227 (2006) .........................................12

*Motors, Inc. v. Times Mirror Co.*,
    102 Cal. App. 3d 735, 162 Cal. Rptr. 543 (1980) ...............................................17

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    238 F.R.D. 482 (C.D. Cal. 2006) .........................................................................22

*O'Connor v. Boeing N. Am., Inc.*,
    184 F.R.D. 311 (C.D. Cal. 1998) .........................................................................8

*People v. Superior Ct.*
    9 Cal. 3d 283, 107 Cal. Rptr. 192, 507 P.2d 1400 (1973) ...................................21

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) ....................................23

*Rubio v. Capital One*,
    613 F.3d 1195 (9th Cir. 2010)..............................................................................17

*Schwartz v. Upper Deck Co.*,
    183 F.R.D. 672 (S.D. Cal. 1999).........................................................................8

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
    323 F.3d 32 (1st Cir. 2003) ..................................................................................10

*State ex. rel. Woodard v. May Dep't Stores Co.*,
    No. 89 CV 9274, 1990 WL 322653 (Colo. Dist. Ct., June 27, 1990)....12, 14, 15

iv

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................. 18

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) ............................................................. 7

*Thomas v. Baca*,
   231 F.R.D. 397 (C.D. Cal. 2005) ........................................................... 18

*Troyk v. Farmers Group, Inc.*,
   171 Cal. App. 4th 1305, 90 Cal. Rptr. 3d 589 (2009) ......................... 13

*United States v. City of New York*,
   276 F.R.D. 22 (E.D.N.Y. 2011) ............................................................. 22

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
   __ U.S. __, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ................. 9, 11

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2010) .............................................................. 20

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) ................................................. 7

## STATUTES, RULES & REGULATIONS

16 C.F.R.
   § 233.1(a) .............................................................................................. 14
   § 233.1(c) ........................................................................................ 14, 15

15 U.S.C.
   § 45(a)(1) .............................................................................................. 13
   § 52(a) .................................................................................................. 13

Federal Rules of Civil Procedure

Rule 23.................................................................................................22
Rule 23(a) ...............................................................................................1
Rule 23(a)(1)........................................................................................8, 9
Rule 23(a)(2) ...........................................................................................9
Rule 23(a)(4).........................................................................................18
Rule 23(b)(2) ........................................................................................22
Rule 23(b)(3) ...................................................................................*passim*
Rule 23(b)(3)(A).....................................................................................23
Rule 23(b)(3)(B) ....................................................................................24
Rule 23(b)(3)(C).....................................................................................24
Rule 23(b)(3)(D)...............................................................................24, 25
Rule 23(c)(2)..........................................................................................25
Rule 23(c)(4).....................................................................................22, 25
Rule 23(g)(1) ...................................................................................2, 18, 19

California Business & Professions Code

§ 17200 ..............................................................................................1, 12
§ 17501 ...........................................................................................*passim*

California Civil Code

§ 1750 .............................................................................................*passim*
§ 1770(a)(13) ..................................................................................1, 11, 12

## SECONDARY AUTHORITIES

Dhruv Grewal and Larry D. Compeau, (Spring 1992)
  *Comparative Price Advertising: Informative or Deceptive?, Journal of
  Public Policy & Marketing*, Vol. 11, No. 1.......................................16

vi

1    Plaintiffs Cheryl Long and Darren Drouin ("Plaintiffs") hereby move for an

2    order certifying their claims as a class action pursuant to Rules 23(a) and 23(b)(3)

3    of the Federal Rules of Civil Procedure.

4    **I.    INTRODUCTION**

5    Plaintiffs contend that Defendants Kohl's Corporation and Kohl's

6    Department Stores, Inc. (collectively "Kohl's" or the "Company") engage in a

7    systematic false price-comparison scheme to boost sales of the Company's private

8    and exclusive branded products.   Specifically, Kohl's sets artificially inflated

9    "Regular" or "Original" prices that have absolutely no connection to historical

10   transactions.   It then compares those prices to purported "sale" prices in order to

11   create the illusion that items are being offered at a great discount.   In reality, the

12   "Regular" and "Original" prices are, at best, misleading, because Kohl's never

13   actually offers products at those prices; or if it does, it does so for such an

14   unreasonably short period of time and simultaneous with other promotional

15   discounts that few, if any, sales actually occur at those prices.

16   Plaintiffs contend that Kohl's violates California's False Advertising Law,

17   Bus. & Prof. Code § 17501 (the "FAL"), which prohibits the use of a former (e.g.,

18   "Regular" or "Original") price unless it equals the prevailing market price within

19   the preceding 90 days; the California Consumers Legal Remedies Act, Cal. Civ.

20   Code §§ 1750, *et seq*., ("CLRA") which prohibits false or misleading statements

21   concerning price reductions, Cal. Civ. Code § 1770(a)(13); and California's Unfair

22   Competition Law, Bus. & Prof. Code §§ 17200, *et seq*. (the "UCL"), under which

23   Plaintiffs incorporate the Federal Trade Commission Act ("FTCA").

24   Through this motion, Plaintiffs seek certification of the following class ("the

25   Class") pursuant to Federal Rules 23(a) and 23(b)(3):

26   All persons who, while in the State of California and between August 5,

27   2006 and the present (the "Class Period"), purchased one or more of

28   Kohl's private or exclusive branded items at a discount of at least 30%

1

off of the stated "Original" or "Regular" price.[1]

Plaintiffs also seek appointment as class representatives and to have their counsel appointed class counsel pursuant to Rule 23(g)(1).

## II.   STATEMENT OF FACTS

### A.   Background

Kohl's operates department stores that sell moderately priced apparel, footwear and accessories; soft home products; and housewares. Ex. A at 6.[2] Kohl's offers "private and exclusive brands which are found '*Only at Kohl's*'" and which constitutes about 50% of the Company's sales. *Id*. at 6. Kohl's sells the same merchandise through 128 California stores as well as its Internet website, where customers can purchase items to be shipped directly to their homes. Ex. B ("Vranak Tr.") at 16:22-24; 50:9-17; Ex. A at 6-7.

Kohl's employs "buyers" who are responsible for choosing merchandise and overseeing a team (a "buying office") that sets prices within their assigned merchandise division. For example, Men's Collections is one of ▇ buying offices within the ▇▇▇▇▇▇. Ex. C. ("Baker Tr.") at 15:4-7; 16:5-12.

### B.   Kohl's Maintains Uniform, Written Pricing Policies that Literally Ensure that the Company Will Violate the FAL

Throughout the Class Period, Kohl's has implemented uniform, company-wide pricing rules and advertising guidelines (the "Guidelines"). Ex. B at 63: 4-7; Ex. D. The Guidelines are provided to all buyers (Ex. B at 63:22-25; 90:2-4) and

---

[1]  Excluded from the Class are Defendants Kohl's Corporation and Kohl's Department Stores, Inc. (collectively "Defendants," "Kohl's" or the "Company"), as well as its past and present officers, employees, agents or affiliates, and any judge who presides over this action. Also excluded from the Class are any persons who would only be included in the Class description as a result of using one or more coupons.

[2]  All Exhibits are attached to the accompanying Evidence in Support of Plaintiffs' Motion for Class Certification, and each Exhibit is authenticated in the accompanying Declarations of Derek J. Emge ("Emge Decl.") or Matthew J. Zevin ("Zevin Decl."), filed concurrently herewith. All page references to Exhibits are to the consecutive numbering, except transcript cites are to the actual page and line of the transcript.

2

are applicable to ███████████████ . *Id.* at 89:21-90:1. ██████████

████████████████████████████████████ , (*id.* at 90:5-25),

and the Compliance Group monitors █████████████

████████ . *Id.* at 79:2-6.

Pursuant to the Guidelines, Kohl's ████████████████████

████████████████████████████ . *Id.* at 95:2-9.  Original prices are used for

████████████████████████████████ and Regular prices are used for

████████████████████████████ . *Id.* at 65:5-23; Ex. D at

67.  The number of days that an item must be offered at its Original price (also

known as "Off-Sale" or the "establishing period") is based on ████████████

██████████████████████████████████

Ex. B at 71:18-22.

The Guidelines set forth ████████████████████████



Non-seasonal items are regulated with ███████████████

██████████████████ The Guidelines require such items to be offered at the Regular

price ████████████████████████████████████ . Ex. B at 82:3-6.  The

remaining ████████████ of the time, comparison price advertising is allowed.

The Guidelines set forth these rules as follows:

3



Ex. D at 68.

Crucially, pursuant to the Guidelines, it is *impossible* for the Regular or Original price to be the prevailing price for any 90 day period of time. Moreover, Kohl's exploits at least two significant loopholes that render its Regular and Original prices even more deceptive. First, Kohl's avoids setting

*See, e.g.*, Ex. E (showing

Second,

Ex. B at 82:7-83:2. This means that even when an item is offered at the Original or Regular price, consumers can still In fact, the buyer in the Men's Collection testified that he Ex. C at 134:2-7.

4

## C.    Every Class Member Was Exposed to Kohl's Deceptive Practice

Kohl's makes its price comparisons known to all customers through a variety of means, such as ███████████████████████████████████ Ex. B at 69:24-70:1; 73:5-15; ██████████████ (*id.* at 73:16-25); ████████████████████████ *Id.* at 74:3-20.  At checkout, consumers receive a receipt showing the store location; the date of sale; a short description of each item sold with a corresponding "SKU" or "PUC" number; the Item price;[3] the actual retail sales price; the purported amount saved; the total transaction amount; including tax, and the use of other discounts, such as coupons or "Kohl's Cash." Bergmark Decl. ¶¶ 13-14.  Accordingly, Kohl's must regularly maintain all such information in the normal course of its business.  *Id.*

## D.    Kohl's Does Not Care if Products Sell at Original or Regular Prices

Kohl's obviously does not care whether it sells items at Original or Regular prices.  The Guidelines do not ██████████████████████████████ (Ex. C at 154:9-19), and Kohl's does not ████████████████████████ *Id.* at 86:22-87:10.  Nor does Kohl's consider ██████████████████████████ *Id.* at 68:4-6; 68:24-69:1.  The failure to even consider such objective data when setting Regular or Original prices demonstrates, at most, that Kohl's is indifferent as to whether products will sell at such prices in the future.

On the other hand, Kohl's sets its *sale prices* based on what it truly believes to be the market value for such items.  These prices are based on objective factors, including the ████████████████████████████████████████████

---

[3] This is the "Regular" or "Original" price.

5

1            ████████████ Ex. C at 69:2-13; 69:22-71:6; 87:12-15.  Moreover, on-sale

2 prices are determined and scheduled ████████████████████████

3 ████████████ Ex. C at 71:17-72:18; 137:8-11.  The on-sale prices are, therefore,

4 prices at which Kohl's actually expects to sell items.

      **E.**      **Plaintiffs Were Victims of Kohl's Deceptive Pricing Practices**

6       Plaintiff Drouin is a California resident who, during the Class Period,

7 purchased from Kohl's private or exclusive branded items offered at a discount of

8 more than 30% off of a stated Regular or Original Price.  Declaration of Darren

9 Drouin ("Drouin Decl."), ¶¶ 2-3; Declaration of Brian Bergmark ("Bergmark

10 Decl."), ¶ 8.  Mr. Drouin relied on Kohl's Regular or Original price representations,

11 and he would not have purchased any items from Kohl's had he known that those

12 did not represent the normal prices at Kohl's.  Drouin Decl., ¶¶ 3-4.

13       Similarly, Plaintiff Cheryl Long is a California resident who, during the Class

14 Period, purchased from Kohl's one or more private or exclusive branded items that

15 were offered at a discount of more than 30% off of a stated Regular or Original

16 Price.  Declaration of Cheryl Long ("Long Decl."), ¶¶ 2-3; Bergmark Decl., ¶ 9.

17 Ms. Long relied on Kohl's Regular or Original price representations and she would

18 not have purchased any items from Kohl's had she known that those did not

19 represent the normal prices at Kohl's.  Long Decl., ¶¶ 3-4.

20       **F.**      **Plaintiffs' Expert Can Use Kohl's Sales Data to Objectively**
             **Confirm Whether the Regular Price Was the Prevailing Market**
21              **Price for Any Product During Any 90 Day Period**

22       Kohl's has a number of databases that track transactions in its stores and

23 through its Internet Website. ████████████ allows for reporting on an ████

24 ████████████████████████████████████████████████

25 ████████ Ex. B at 22:20-24.  Its ████████████ includes information on

26 ████████████████████████████████████████████████

27 ████████████████████████████ Ex. C at 39:6-42:5.

28       Plaintiffs' expert can use the actual transaction data to perform a multitude of

6

statistical calculations and analyses to determine the number of units: 1) sold by item number; 2) sold during a given time period; 3) sold at the Original or Regular price; 4) sold on-sale; and 5) sold at a price discounted 30% or more; as well as to determine: 1) the average actual sales price over a given time period; 2) the most prevalent actual sales prices; and 3) the percentage discount per sale over a given time period. Bergmark Decl., ¶¶ 12-24. He can then compare that data to the Regular or Original price stated by Kohl's for each such item to determine when, if ever, that price equaled or exceeded (or did not equal or exceed) the prevailing market price. *Id*. at ¶¶ 21-24. Accordingly, he has a method to objectively determine whether any product's Regular or Original price was, in fact, the prevailing market price during any 90-day period. *Id*.

## III.   **ARGUMENT**

"District courts in California routinely certify consumer class actions arising from alleged violations of the CLRA, FAL, and UCL." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (citing *e.g., Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504 (C.D. Cal. 2012) (certifying a UCL/CLRA class of purchasers of vehicles); *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 547 (C.D. Cal. 2012) (denying reconsideration of class certified under the UCL, FAL, and CLRA); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 375-80 (N.D. Cal. 2010) (certifying class under the CLRA and UCL); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 589 (C.D. Cal. 2008) (same)).

These claims each "rely on the same objective test, that is, whether 'members of the public are likely to be deceived.'" *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 532 (C.D. Cal. 2011) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312, 93 Cal. Rptr. 3d 559, 207 P.3d 20 (2009)). This objective test renders claims under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to investigate "class members' individual interaction with the product." *Bruno*, 280 F.R.D. at 535. *See also Yumul v. Smart Balance, Inc.*, 733 F.

7

Supp. 2d 1117, 1125 (C.D. Cal. 2010) ("[R]easonable reliance is not an element of claims under the UCL, FAL, and CLRA.").

## A.    Rule 23(a)(1)'s Numerosity Requirement is Met

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Where 'the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'"  *In re Abbott Labs. Norvir Anti-Trust Litig.*, Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899, at *6 (N.D. Cal. June 11, 2007) (quoting 1 Alba Cone & Herbert B. Newberg, *Newberg on Class Actions* § 3.3 (4th ed. 2002)).

As is typical, the exact class size is currently unknown, but given that Kohl's operates over 120 stores in California and the extraordinary volume of discounts it offers, general knowledge and common sense indicate that the class is sufficiently large to satisfy the numerosity requirement of Rule 23(a)(1).

In addition to requiring numerosity, courts have also held that the class must be ascertainable, or "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member."  *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).  *See also Keegan v. American Honda Motor Co., Inc.*, 284 F.R.D. 504, 521-22 (C.D. Cal. 2012) (holding that a class is ascertainable when it relies "on objective criteria that [is] verifiable through documentation . . .."); *cf. Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999) (noting that a class is not ascertainable if membership depends on a prospective member's state of mind).

Here, class membership does not depend on a consumer's state of mind but is instead based on purely objective and verifiable criteria that turns on two features: 1) the purchase of private or exclusive labeled products from a Kohl's store in California, (or a billing address in California for purchases on the internet), and a purchase price that represents a discount of at least 30% off of the stated "Regular"

8

or "Original" price without the use of a coupon. These objective characteristics can all be established based on existing documentation, including Kohl's internal records and customer receipts. *See, e.g.*, Bergmark Decl., ¶¶ 8-9. Accordingly, Rule 23(a)(1) is satisfied.

### B.      Plaintiffs' Claims Satisfy the Commonality Requirement of Rule 23(A)(2) and the Predominance Requirement of Rule 23(B)(3)

Because Rules 23(a)(2) and 23(b)(3) overlap, Plaintiffs discuss them together. Rule 23(a)(2) asks whether there is a question of law or fact that is common to the class. This requires that a class claim "depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) ("*Dukes*").[4]

Rule 23(b)(3) requires that common questions *predominate* over individual questions. It asks "'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' The focus is on 'the relationship between the common and individual issues.'" *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009) (internal citation omitted). This criterion is normally satisfied when there is an essential common factual link between all class members and the defendant for which the law provides a remedy. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996). "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc., v. Halliburton Co.*, __U.S. __, 131 S. Ct. 2179, 2184, 180 L. Ed. 2d 24 (2011). Accordingly, Plaintiffs analyze each claim separately below.

---

[4]  Plaintiffs need not show that questions will be answered in favor of the class, but must only show that they have a common methodology for proving liability on behalf of the class. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, __ U.S. __, 133 S. Ct. 1184, 1191, 185 L. Ed. 2d 308 (2013) ("*Amgen*").

## 1.   <u>The FAL Presents Common Questions that Predominate</u>

The FAL prohibits the use of a former price (including a "Regular" or "Original" price) unless it was the "prevailing market price" for that product during the previous 90 days.  Cal. Bus. & Prof. Code § 17501.  This claim is ideally suited for class certification because it presents a single and purely objective test that can be evaluated based on purely objective criteria.  *Amgen*, 133 S. Ct. at 1191 (an issue that is judged according to an objective standard "is a question common to all members of the class . . ."); *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003) ("Common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria-thus rendering unnecessary an evidentiary hearing on each claim.") (citations omitted).

Plaintiffs contend that Kohl's systematically and uniformly violates the FAL because its Company-wide Guidelines *guarantee* that Regular and Original prices will *never* be the prevailing market price for *any* product during *any* 90-day period.

Critically, the truth or falsity of Plaintiffs' contention can be determined through purely objective means, including a statistical analysis of Kohl's historical sales data.  Plaintiffs' expert will use existing data to calculate a multitude of variables, including the number of units sold at the regular price, the average selling price and the prevailing (or most common) price for each item during each rolling 90-day period throughout the Class Period.  Bergmark Decl., ¶¶ 12-24.  He can then determine when, if ever, the prevailing market price equaled Kohl's stated Regular or Original price as required by the FAL.  *Id*. at ¶¶ 21-24.  For each day that a Regular or Original price is higher than the prevailing price for the preceding 90 days, liability will be established on behalf of each and every class member who purchased the product on that date.  While this analysis will undoubtedly involve a lot of products and a lot of transactions, it can be done using purely objective sales data and through a purely mechanical and computerized process.  *Id*.

Based on a similar offer of proof, the court in *Brazil v. Dell Inc.*, No. C-07-

10

01700, 2010 WL 5387831 (N.D. Cal. Dec. 21, 2010) found that common issues predominated and certified virtually identical claims under the FAL, UCL and CLRA. In so doing, the court relied on the fact that Dell, like Kohl's, purported to offer discounts from its own "previously offered prices," making the question of whether such representations were false "susceptible to common proof in the form of Dell's pricing histories, as well as through testimony from Dell's employees about the pricing policies." *Id.* at *5 *Cf. Mahfood v. QVC, Inc.*, No. SACV 06-0659-AG, 2008 WL 5381088 (C.D. Cal. Sept. 22, 2008) (denying class certification where discounts were specifically represented as being lower than some general market value).

This case presents the same common and predominate questions posed in *Brazil* because: 1) Plaintiffs' claims are limited to private and exclusive branded items that Kohl's has aggressively promoted as being available "only at Kohl's;" and 2) the Regular and Original price tags that Kohl's uses can only logically be interpreted as representing Kohl's previously offered prices. Bergmark Decl., ¶ 18.[5]

### 2. The CLRA Claim Presents Common Questions that Predominate

The CLRA prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(13). Plaintiffs contend that the Regular and Original prices that Kohl's uses to compare its discounted "sale" prices are *always* false and misleading because: 1) they are not used for a reasonable period of time, if ever; and 2) they do not result in a reasonable number of sales at those prices. If true, these facts will demonstrate that the existence and amounts of the price reductions are false or misleading in violation of the CLRA.

---

[5] Because Plaintiffs' expert can determine with precise "specificity" when Original or Regular prices do not equal the prevailing market price, the common proof in this case stands in direct contrast to the lack of common proof in *Dukes*, where the plaintiff's expert could *not* "determine with any specificity how regularly" Wal-Mart engaged in employment discrimination. *Dukes*, 131 S. Ct. at 2553.

11

In order to establish liability under this claim, Plaintiffs will again rely on Kohl's uniform pricing Guidelines and its objective sales data.  As noted, the same type of common and objective evidence was relied upon in *Brazil*, which certified a false price comparison claim under the CLRA.  Such evidence was also relied upon in another price-comparison case, in *State ex. rel. Woodard v. May Dep't Stores Co.*, No. 89 CV 9274, 1990 WL 322653, at *10 (Colo. Dist. Ct., June 27, 1990) ("*Woodard*") (*reversed in part on other grounds, May Dep't Stores Co. v. State ex rel. Woodard*, 863 P.2d 967 (Colo. 1993)), where the court examined pricing policies that were virtually indistinguishable from those of Kohl's and determined that the defendant did not have a good faith intention of selling a meaningful quantity of products at its stated regular prices in violation of both the FTCA and a Colorado law that is identical to § 1770(a)(13) of the CLRA.  *Id*.  The exact same analysis can be made under the CLRA in this case.

### 3.    The UCL Claims Present Common Questions that Predominate

Plaintiffs' claims under the UCL are also ideally suited for class treatment. The UCL is a uniquely comprehensive statutory scheme that protects consumers from "wrongful business conduct in whatever context such activity might occur." *Barquis v. Merchants Collection Ass'n*, 7 Cal. 3d 94, 111, 101 Cal. Rptr. 745, 496 P.2d 817 (1972).  Unfair competition includes "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Crucially, the California Supreme Court has emphasized that "[t]he substantive right extended to the public by the UCL is the 'right to protection from fraud, deceit and unlawful conduct,' and the focus of the statute is on the defendant's conduct." *Tobacco II*, 46 Cal. 4th at 324, 93 Cal. Rptr. 3d 559, 207 P.3d 20 (2009) (internal quotation marks and citation omitted).

"Because the statute is framed in the disjunctive, a business practice need only meet one of the three criteria to be considered unfair competition." *McKell v.*

1   *Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1471, 49 Cal. Rptr. 3d 227 (2006).

2   "Therefore, an act or practice is 'unfair competition' under the UCL if it is

3   forbidden by law or, even if not specifically prohibited by law, is deemed an unfair

4   act or practice." *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1335, 90

5   Cal. Rptr. 3d 589 (2009) (citations omitted).   Here, Plaintiff has asserted three

6   separate claims under the UCL – one for each of the three prongs.

### a.    Common Questions Predominate Under the "Unlawful" Prong

9   To state a claim under the "unlawful" prong, Plaintiffs need only prove that

10  Kohl's engaged in "anything that can properly be called a business practice and that

11  at the same time is forbidden by law." *Farmers Ins. Exch. v. Superior Court*, 2 Cal.

12  4th 377, 383, 6 Cal. Rptr. at 2d 487, 826 P.2d 730 (1992).   The "UCL authorizes

13  lawsuits to remedy unlawful conduct even if the underlying statute that renders the

14  conduct unlawful does not itself create an independent right of action." *Blue Cross*

15  *of Ca., Inc. v. Superior Court*, 180 Cal. App. 4th 1237, 1250, 102 Cal. Rptr. 3d 615

16  (2009) (citations omitted).

17  Here, Plaintiffs contend that Kohl's violated at least three independent laws –

18  the FAL, the CLRA and the FTCA – each of which serves as a separate basis for

19  liability under the UCL's unlawful prong.   SAC ¶¶ 66-74.   The common and

20  predominant questions under the FAL and CLRA are discussed above and

21  incorporated by reference. *See* sections III.B.1 and 2, *supra*.

22  Whether Kohl's violated the FTCA also presents a common and predominant

23  question.   The FTCA generally prohibits "unfair or deceptive acts or practices in or

24  affecting commerce" (15 U.S.C. § 45(a)(1)), and it specifically prohibits false

25  advertisements.   15 U.S.C. § 52(a).   It also identifies false price comparisons,

26  identical to the practices of Kohl's in all material respects:

27  One of the most commonly used forms of bargain advertising is to offer

28  a reduction from the advertiser's own former price for an article. . . . If

13

1   . . . the former price being advertised is not bona fide but fictitious – for
2   example, where an artificial, inflated price was established for the
3   purpose of enabling the subsequent offer of a large reduction – the
4   "bargain" being advertised is a false one; the purchaser is not receiving
5   the unusual value he expects.  In such a case, the "reduced" price is, in
6   reality, probably just the seller's regular price.

7   16 C.F.R. § 233.1(a).

8   The FTCA provides an example of a "fictitious" price-comparison scheme
9   that could serve as a template for the practices of Kohl's during the Class Period:

10   John Doe is a retailer of Brand X fountain pens, which cost him $5
11   each.  His usual markup is 50 percent over cost; that is, his regular retail
12   price is $7.50.  In order subsequently to offer an unusual "bargain", Doe
13   begins offering Brand X at $10 per pen.  He realizes that he will be able
14   to sell no, or very few, pens at this inflated price. But he doesn't care,
15   for he maintains that price for only a few days. Then he "cuts" the price
16   to its usual level – $7.50 – and advertises: "Terrific Bargain: X Pens,
17   Were $10, Now Only $7.50!" This is obviously a false claim.   The
18   advertised "bargain" is not genuine.

19   16 C.F.R. § 233.1(c).

20   While Kohl's might argue that the FTCA requires only that it offer products
21   at Regular or Original prices for a reasonable period of time, the court in *Woodard*,
22   flatly *rejected* that argument.  It held, unequivocally, that the FTCA requires *both*
23   that items be offered at the regular price for a reasonable period of time, and *also*
24   that a retailer have a bona fide and good faith intention of selling a reasonable
25   quantity of products at regular price.  *Woodard*, 1990 WL 322653, at \*10.  In fact,
26   the court in that case determined that the defendant satisfied the first test of offering
27   products at the regular price for a "reasonably substantial period of time," but that it
28   *still* violated the FTCA because it "knew that no or very few items . . . would sell at

14

1  the inflated 'original' price."). *Id.*  Accordingly, Plaintiffs may establish liability

2  under the FTCA by showing *either* that Kohl's did not offer products at the

3  Regular/Original price for a reasonable period of time; *or* that Kohl's lacked a good

4  faith intention of selling products at those prices. *Id.*

5      The first inquiry creates a single and inherently common question because

6  the Court can simply look at Kohl's uniform Guidelines to determine if Kohl's

7  offers products at Regular or Original prices for a reasonable period of time.

8      As to the second inquiry, Plaintiffs will rely on the fact that the Guidelines

9

10

11                                                                             This

12  evidence shows that Kohl's, like the retailer in the FTC example, "doesn't care" if it

13  sells any products at the Regular or Original prices.  16 C.F.R. § 233.1(c).  Rather, like

14  the defendant in *Woodard*, Kohl's *ignores* the fact that "no or very few items"

15  historically sell at Regular/Original prices but it nevertheless continues to use and

16  compare those prices to drastically reduced "sale" prices in order to create the false

17  illusion of a bargain. *Woodard*, 1990 WL 322653, at *10.  *See also B. Sanfield, Inc. v.*

18  *Finlay Fine Jewelry Corp.*, 258 F.3d 578, 580 (7th Cir. 2001) ("*Finlay*") (3% of

19  sales at the "regular" price is not substantial and shows that there is no "good faith . . .

20  intent to sell [products] at the regular price").

21      Since either test under the FTCA can be proven using common and empirical

22  evidence, Rules 23(a)(2) and 23(b)(3) are satisfied.

23          b.    **Common Questions Exist Under the "Fraudulent" and**

24                **"Unfair" Prongs**

25      Plaintiffs contend that the Regular and Original prices that Kohl's uses are

26  likely to deceive consumers because they do not represent Kohl's usual or

27  customary offering price, let alone the prices at which products normally sell.  To

28  prove this contention, Plaintiffs will again rely on the Guidelines (and its loopholes)

15

1  to demonstrate that products are rarely, if ever, offered at those prices, as well as a
2  statistical analysis of actual sales data to demonstrate that Kohl's rarely, if ever,
3  sells items at Regular or Original prices.  Based on such evidence, the Court could
4  easily determine that the Regular and Original price references are misleading and
5  likely to deceive consumers.  *See Finlay*, 258 F.3d at 580 (Where only 3% of
6  products sell at the regular price, "[w]ords such as 'unfair,' 'misleading,' and
7  'deceptive' understate the gravity of [the defendant's] misconduct.  'False' and
8  'fraudulent' are more accurate labels.").

9         Plaintiffs may also rely on empirical research to demonstrate that false price
10 comparisons, such as those alleged to be used by Kohl's, tend to deceive consumers
11 and influence purchasing decisions.

12         For example, it has been documented that:

13         [c]omparative price advertising offers consumers a basis for comparing the
14         relative value of the product offering by suggesting a monetary worth for
15         the product and any potential savings. . . . [A] comparative price
16         advertisement can be construed as deceptive if it makes any representation,
17         . . . or involves any practice that may materially mislead a reasonable
18         consumer.  [Accordingly, consumers'] perceptions of value are positively
19         influenced by . . . their internal reference price.

20                                    * * *

21         [T]he lower the selling price relative to the internal reference price, the
22         larger the perceived value.  In other words, consumers attach value to saving
23         money. . . .  By creating an impression of savings, the presence of a higher
24         reference price enhances subjects' perceived value and willingness to buy
25         the product. . . .  Thus, if the reference price is not truthful, a consumer may
26         be encouraged to purchase as a result of a false sense of value.

27 Dhruv Grewal and Larry D. Compeau, *Comparative Price Advertising: Informative*
28 *or Deceptive?, Journal of Public Policy & Marketing*, Vol. 11, No. 1, at 52, 55-56

(Spring 1992).

Based on such research, it is clear that consumers rely on false price comparisons, and the ultimate question of whether Kohl's uses price comparisons that are "likely to deceive" a reasonable consumer is a question subject to common, classwide proof, making certification appropriate. *See Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 728-29 (9th Cir. 2012) (affirming certification of UCL claim under the "fraudulent" prong because the "pervasive nature of [the defendant's] misleading marketing materials amply demonstrates that class members . . . were exposed to the materials and likely relied on them"); *Rubio v. Capital One*, 613 F.3d 1195, 1200-01 (9th Cir. 2010) (relying on consumer research to objectively determine whether disclosures are clear and conspicuous).

Likewise, under the "unfair" prong of the UCL, the Court must examine the impact of Kohl's practice "on alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer[s]. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the [plaintiff] . . . ." *Motors, Inc. v. Times Mirror Co*., 102 Cal. App. 3d 735, 740, 162 Cal. Rptr. 543 (1980). *See also Hurley v. Pechiney Plastic Packaging, Inc.*, No. C 05-05028 JSW, 2006 WL 708656, at *7 (N.D. Cal. Mar. 16, 2006) ("Unfair" simply means any practice whose harm to the victim outweighs any benefits.).

Here, the Court need only compare the utility of Kohl's company-wide price comparison scheme with the gravity of harm to consumers who are clearly influenced by false perceptions of a discount. Since the test for determining liability and evidence in support thereof are common and objective, common questions predominate.

### C.   The Typicality Requirement of Rule 23(a)(3) is Met

Typicality under Rule 23(a)(3) is satisfied if the claim of the named class representatives arise "from the same course of conduct that gives rise to claims of the unnamed class members [and] . . . [is] based on the same legal theory that would be

17

1   advanced were the unnamed class members to bring individual actions . . . ."

2   *Thomas v. Baca*, 231 F.R.D. 397, 401 (C.D. Cal. 2005).   The standard is

3   "permissive," and "representative claims are 'typical' if they are reasonably co-

4   extensive with those of absent class members; they need not be substantially

5   identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).   Thus,

6   typicality is satisfied even if there are factual distinctions between the named plaintiff

7   and other class members.  *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001),

8   *abrogated on other grounds, Johnson v. California*, 543 U.S. 499, 125 S. Ct. 1141,

9   160 L. Ed. 2d 949 (2005).

10      Plaintiffs' claims against Kohl's are based on the same facts, and the same

11   legal and remedial theories as the claims of the Class.   Like other class members,

12   Plaintiffs purchased private or exclusive branded products that were advertised by

13   Kohl's as being offered at a discount of 30% or more off of an inflated Regular or

14   Original price.   This alone makes their claims typical of the claims of the entire

15   Class and satisfies Rule 23(a)(3).  *Armstrong*, 275 F.3d at 868.

16      **D.**    **Rules 23(a)(4) and 23(g)(1) Are Satisfied**

17      Rule 23(a)(4) requires that "the representative parties will fairly and

18   adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).   The rule is

19   satisfied when counsel for the Class are qualified and competent to vigorously

20   prosecute the action, and when the interests of the class representative are not

21   antagonistic to the interests of the class.  *See, e.g., Staton v. Boeing Co.*, 327 F.3d

22   938, 957 (9th Cir. 2003).   Under Rule 23(g)(1), the Court must appoint class

23   counsel who have adequately identified or investigated potential claims, who have

24   adequate experience and knowledge of the applicable law, and who have adequate

25   resources to commit to representing the Class. Fed. R. Civ. P. 23(g)(1).

26      Once a *prima facie* showing has been made that these tests have been met,

27   the burden shifts to the Defendant to prove that the class representative will not

28   fairly and adequately protect the interests of the Class.  *Armour v. Network Assocs.*,

1 *Inc.*, 171 F. Supp. 2d 1044, 1053 (N.D. Cal. 2001). Even then, only a fundamental

2 conflict that goes to the heart of the litigation prevents certification, and speculative

3 conflicts should be disregarded. *In re Visa Check/MasterMoney Antitrust Litig.*,

4 280 F.3d 124, 145 (2d Cir. 2001).

5 Here, Plaintiffs are adequate representatives because they are members of the

6 Class and have no known interests that are antagonistic. Drouin Decl., ¶¶ 1-4, 6;

7 Long Decl., ¶¶ 1-4, 6. The conduct of Kohl's, *vis-à-vis* Plaintiffs, was identical to

8 its conduct with the Class, and Plaintiffs seek the same recovery as other members

9 of the Class. Accordingly, there are no fundamental or disabling conflicts.

10 Plaintiffs have retained competent counsel, taken the initiative to step in as

11 class representatives, and intend to vigorously pursue this action on behalf of the

12 Class. Drouin Decl., ¶ 5; Long Decl., ¶ 5. They have already assisted counsel by

13 providing relevant records and information, they will participate in discovery, they

14 will continue to assist counsel, and they will testify at trial, if necessary. Drouin

15 Decl., ¶ 5; Long Decl., ¶ 5. Plaintiffs are, therefore, adequate class representatives.

16 Class Counsel are also undoubtedly qualified, experienced and generally able

17 to conduct the litigation. They have extensive experience prosecuting consumer

18 class actions and the resources necessary to prosecute this action vigorously on

19 behalf of the Class. Emge Decl., ¶¶ 4-5; Declaration of Matthew J. Zevin, ¶¶ 1-5.

20 Indeed, Class Counsel have already demonstrated their commitment and adequacy

21 by thoroughly investigating and vigorously prosecuting this matter. *In re Emulex*

22 *Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) ("In evaluating the

23 adequacy of attorneys representing the class, a court may examine the attorneys'

24 professional qualifications, skill, experience, and resources. The court may also

25 look at the attorneys' demonstrated performance in the suit itself.") (citations

26 omitted). Accordingly, Rules 23(a)(4) and 23(g)(1) are satisfied.

27 **E.    All of the Requirements of Rule 23(B)(3) Are Satisfied**

28 Rule 23(b)(3) has two requirements: (1) predominance of common questions

19

of law or fact, and (2) superiority of a class action to other available methods for the fair and efficient adjudication of the controversy.  Rule 23(b)(3) "cover[s] cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) (internal quotation, citation and alteration omitted).

### 1.   None of the Remedies Sought in This Case Will Defeat Predominance

Plaintiffs demonstrate above that each of their claims present common and predominant questions concerning liability.  These common questions will also predominate over any potential individual issues concerning remedies.

Under the UCL and FAL, an injunction is the "primary form of relief available." *Tobacco II*, 46 Cal. 4th at 319.  Since an injunction will not present any individual issues, it cannot create individual issues that predominate.  Plaintiffs' claims, therefore, can each be certified, at a minimum, for purposes of determining liability and seeking injunctive relief.

While Plaintiffs also seek restitution and damages under the CLRA, and restitution under the UCL and FAL, the Ninth Circuit has long held that "damage calculations alone cannot defeat certification. . . . 'The amount of damages is invariably an individual question and does not defeat class action treatment.'" *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).  Accordingly, any differences in the amount owed to class members will not defeat predominance.

Significantly, there is no single manner by which restitution must be measured, because the "'courts' discretion is very broad' as to the remedy it awards." *Colgan v. Leatherman Tool Group., Inc.*, 135 Cal. App. 4th 663, 695, 38 Cal. Rptr. 3d 36 (2006) (quoting *Cortez v. Purolator Air Filtration Products, Co.,*

20

23 Cal. 4th 163, 179-80 (2000)).  Accordingly, the Court need not presently decide on the proper measure of restitution, as it will have broad discretion to decide that issue after liability is established.[6]

Indeed, "a court of equity may exercise the full range of its inherent powers in order to accomplish complete justice between the parties, restoring if necessary the status quo ante as nearly as may be achieved." *People v. Superior Ct.* ("*Jayhill*"), 9 Cal. 3d 283, 286, 107 Cal. Rptr. 192, 507 P.2d 1400 (1973).  Thus, the Court "has the inherent power to order, as a form of ancillary relief, that the defendants make, or offer to make, restitution to the customers found to have been defrauded." *Id.* (citing cases).  Under this approach, the Court may simply order that Kohl's offer each class member "the opportunity to rescind his contract, return the products, and obtain a refund." *Id.  See also FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048 (C.D. Cal. 2012) (Restitution may be measured by the "the full amount lost by consumers rather than limiting damages to a defendant's profits.") (citing cases).

Consistent with this authority, Plaintiffs propose three alternative methods for calculating restitution: 1) complete restitution (as discussed in *Jayhill* and numerous FTC cases); 2) restitution based on the false discount or "transaction value" promised by Kohl's; or 3) restitution in the amount that Kohl's profited from its deceptive conduct.  *See* Bergmark Decl., ¶¶ 25-30.

Crucially, each of these theories rests on mathematical calculations based on objective evidence including class member receipts and Kohl's sales data.  *Id*. Plaintiffs' expert has already performed one such calculation for Plaintiff Drouin and, given the appropriate documentation, he could easily perform calculations under any of the proposed theories on behalf of the entire Class or each class member individually.  *Id*.  Since these calculations are purely mechanical, they do

---

[6]   In exercising its "very broad" discretion, the Court must keep in mind that "the remedy of restitution serves two purposes – returning to the plaintiff monies in which he or she has an interest and deterring the offender from future violations." *Id.*

1   not provide an obstacle to class certification.  *See generally Negrete v. Allianz Life*
2   *Ins. Co. of N. Am.*, 238 F.R.D. 482, 494 (C.D. Cal. 2006) ("'Particularly where
3   damages can be computed according to some formula statistical analysis, or other
4   easy or essentially mechanical methods, the fact that damages must be calculated on
5   an individual basis is no impediment to class certification.'") (citation omitted).

6   **2.    Alternatively, the Court Can Certify a Liability Only Class**

7   Rule 23(c)(4) authorizes the Court to certify "particular issues."  Fed. R. Civ.
8   P. 23(c)(4).   Court have recently noted that Rule 23(c)(4) gives them multiple
9   options, each of which are available in this case.  *E.g., Johnson v. Meriter Health*
10  *Servs. Emp. Ret. Plan*, 702 F.3d 364, 371-72 (7th Cir. 2012) (endorsing a "divided
11  certification," whereby the court conducts "a (b)(2) proceeding first, and if the
12  plaintiffs obtain declaratory relief a (b)(3) proceeding (where notice and the right to
13  opt out are mandatory) to follow"); *Haddock v. Nationwide Fin. Serv., Inc.*, __
14  F.R.D. __, No. 3:01-cv-1552, 2013 WL 4782375 (D. Conn. Sept. 6, 2013)
15  (certifying claims under Rule 23(b)(3), but noting that the court could alternatively
16  certify a liability and injunctive relief only class under Rule 23(b)(2), and certify a
17  separate damages class under Rule 23(b)(3)); *Maziarz v. Hous. Auth. of the Town of*
18  *Vernon*, 281 F.R.D. 71, 83 (D. Conn. 2012) (noting that the court could certify an
19  'injunction class' under Rule 23(b)(2) and a 'damages class' under Rule 23(b)(3)");
20  *United States v. City of New York*, 276 F.R.D. 22, 27-32 (E.D.N.Y. 2011) (the
21  district court may certify only those portions of a claim that satisfy Rule 23, even if
22  other portions of the claim do not).

23  Given that an injunction is the "primary" form of relief under the UCL and
24  FAL, Plaintiffs request that the Court, in the alternative, bifurcate issues and certify
25  a liability-only class, which would avoid altogether any issues concerning damages
26  or restitution.  *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
27  No. 10-4188, 2013 WL 3746205 (6th Cir. 2013) (certifying liability only class
28  under Rule 23(b)(3)).

22

### 3.    A Class Action is Superior to Individual Actions

In addition to requiring common questions that predominate, Rule 23(b)(3) asks whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry asks the Court to balance in terms of fairness and efficiency the merits of a class action against alternative methods of adjudication to determine which is superior. *Gete v. I.N.S.*, 121 F.3d 1285, 1299 (9th Cir. 1997). The rule provides certain nonexclusive factors to guide the Court's analysis:

> (A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

#### a.    Rule 23(b)(3)(A)

Given the undoubtedly large size of the Class in this case, each class member's interest in having their claims aggregated in a single lawsuit substantially outweighs the interest of a class member having individual control of the litigation. *See, e.g., Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The more claimants there are, the more likely a class action is to yield substantial economies in litigation.").

A class action is also superior in this case because it would permit class members to pool claims which would be uneconomical to litigate individually, and "most of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985); *see also In re Worldcom Inc., Sec. Litig.*, 219 F.R.D. 267, 304 (S.D.N.Y. 2003) ("Few individuals could even contemplate proceeding with this

23

1  litigation in any context other than through their participation in a class action,

2  given the expense and burden that such litigation would entail.").

3         Here, the amount of each class member's individual claim is relatively small,

4  making individual litigation impracticable.   For example, based on their

5  transactions identified to date, Plaintiff Drouin's individual claim may be worth, at

6  most, $87.09, and Ms. Long's would be worth, at most, $70.40.  Bergmark Decl.,

7  ¶ 26.  There is no basis to conclude that they or any other class member maintains

8  claims so large as to justify the substantial cost and resources necessary to

9  individually prosecute their claims against a large corporate entity such as Kohl's.

10  Accordingly, this factor weighs in favor of certification.

11              **b.        Rules 23(b)(3)(B) and 23(b)(3)(C)**

12         Class Counsel are not aware of any pending litigation in which the claims at

13  issue in this case are being separately pursued by any other class member, and the

14  claims of Plaintiffs and the Class are all based on the law of California.  Since this

15  Court has the most familiarity with this litigation, having presided over it since its

16  filing, this is the most efficient forum to litigate this case on behalf of the Class.

17              **c.        Rule 23(b)(3)(D)**

18         There is no reason to believe that the prosecution of Plaintiffs' claims in a

19  single class action will create more management problems than the alternative (i.e.,

20  the prosecution of thousands or even millions of separate lawsuits by each class

21  member).  Significantly, it is proper for the Court to consider the "inability of the

22  poor or uninformed to enforce their rights, and the improbability that large numbers

23  of class members would possess the initiative to litigate individually."  *Haynes v.*

24  *Logan Furniture Mart, Inc*., 503 F.2d 1161, 1165 (7th Cir. 1974).  Meanwhile, the

25  mere possibility of complexity or unmanageability does not defeat a class action.

26  *Visa Check/MasterMoney*, 280 F.3d at 140.

27         Here, the Class consists of (at least) many thousands of consumers,

28  undoubtedly of varying economic backgrounds, asserting relatively small claims

24

1  with no other reasonable means of enforcing their rights.  Given the commonality
2  established above, the adjudication of class claims would not be significantly more
3  burdensome than if the matter were prosecuted individually.  To the contrary, it
4  would be much more burdensome on the courts, parties, and judicial system to
5  entertain a multiplicity of lawsuits regarding Kohl's common conduct.

6    While the identity of every class member might not be known, Kohl's clearly
7  has access to the names and addresses of a huge number of potential class members
8  because it ships directly to customers who purchase items on its internet website, it
9  maintains a Kohl's Rewards program, and it has a co-branded credit card.
10  Accordingly, class notice (as required by Rule 23(c)(2) can be mailed (or e-mailed)
11  directly to all such persons who have a California address, and additional notice can
12  be provided by a number of means, including publication in newspapers and/or an
13  online publication.  *Johns v. Bayer Corp.*, No. 09cv1935 AJB, 2013 WL 435201, at
14  *2 (S.D. Cal. Feb. 1, 2013) (citing authorities).

15    In sum, prosecuting this case as a class action does not present any
16  insurmountable difficulties within the meaning of Rule 23(b)(3)(D), and the class
17  mechanism is clearly the superior vehicle by which to adjudicate this controversy.

18  **IV.   CONCLUSION**

19    For the reasons discussed herein, Plaintiffs respectfully request that the Court
20  certify this case under Rule 23(b)(3), appoint them as representatives of the Class,
21  and appoint Stanley • Iola, LLP and Emge & Associates as Class Counsel.
22  Alternatively, Plaintiffs request that the Court certify each claim for a determination
23  of liability and injunctive relief only pursuant to Rule 23(c)(4).

24  DATED: November 7, 2013          STANLEY • IOLA, LLP

25

26

27             */s/ Matthew J. Zevin*
             MATTHEW J. ZEVIN
28

25

225 Broadway, Suite 1350
San Diego, CA  92101
Telephone:   (619) 235-5306
Facsimile:    (815) 377-8419

EMGE & ASSOCIATES
DEREK J. EMGE, SBN: 161105
225 Broadway, Suite 1350
San Diego, CA  92101
Telephone:  (619) 595-1400
Facsimile:    (619) 595-1480

Attorneys for Plaintiffs

26