James F. Speyer (Bar No. 133114)
james.speyer@aporter.com
E. Alex Beroukhim (Bar No. 220722)
alex.beroukhim@aporter.com
ARNOLD & PORTER LLP
777 Figueroa Street, 44th Floor
Los Angeles, California 90017
Telephone: (213) 243-4000
Facsimile: (213) 243-4199

Attorneys for Defendants
Kohl's Corporation and Kohl's Department Stores, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ANTONIO S. HINOJOS, individually, and DARREN DROUIN and CHERYL LONG, individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>KOHL'S CORP., a Wisconsin corporation; KOHL'S DEPARTMENT STORES, INC., a Delaware corporation,<br><br>                    Defendants. | Case No.: CV 10-07590 ODW (AGRx)<br><br>**REDACTED MEMORANDUM OF DEFENDANTS KOHL'S CORPORATION AND KOHL'S DEPARTMENT STORES, INC. IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>DATE:     January 27, 2014<br>TIME:     1:30 p.m.<br>JUDGE:   Hon. Otis D. Wright, II<br>CRTM:   11 |

34326358v3

1
2

# TABLE OF CONTENTS

**Page**

Introduction ....................................................................................................... 1

Factual Background ........................................................................................... 2

    A.     Advertising And Promotions At Kohl's ................................ 3

    B.     Pricing At Kohl's ................................................................. 5

    C.     Return Policy At Kohl's ....................................................... 6

    D.     The Buying Decisions Of Kohl's Shoppers Are Highly Individualized And Are Not Necessarily Influenced By Advertised "Regular" or "Original" Prices ................................. 6

    E.     Drouin's Claims .................................................................. 7

    F.     Long's claims ...................................................................... 8

Argument ........................................................................................................... 8

I.     THE LEGAL STANDARD ............................................................. 8

II.    PLAINTIFFS CANNOT ESTABLISH COMMONALITY OR PREDOMINANCE ....................................................................... 9

    A.     Plaintiffs Cannot Establish Falsity On A Classwide Basis ................... 10

        1.    The FAL Claim Requires Hundreds Of Thousands Of Individualized Determinations Of Truth Or Falsity ..................... 10

        2.    The UCL "Unlawful" Claim Would Require Hundreds Of Thousands Of Individualized Determinations Of Truth Or Falsity ............................. 14

        3.    The UCL "Unfair" And "Fraudulent" Claims and the CLRA Claim Require Hundreds Of Thousands Of Individual Determinations Of Truth Or Falsity ......................... 17

    B.     Plaintiffs Cannot Establish Causation On A Classwide Basis ............... 17

    C.     Plaintiffs Cannot Establish Restitution On A Classwide Basis ............. 20

III.   DROUIN AND LONG ARE INADEQUATE AND ATYPICAL CLASS REPRESENTATIVES ..................................................... 24

Conclusion ....................................................................................................... 25

- i -

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. Exp. Co. v. Italian Colors Rest.*,
   133 S. Ct. 2304 (2013) ...............................................................1, 8

*Brazil v. Dell, Inc.*,
   2010 WL 5387831 (N.D. Cal. Dec. 21, 2010) ...............................14

*Campion v. Old Republic Home Prot. Co., Inc.*,
   272 F.R.D. 517 (S.D. Cal. 2011) .................................................17

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) .........................................................passim

*In re Countrywide Fin. Corp. Mortg. Marketing and Sales Practices Litig.*,
   277 F.R.D. 586 (S.D. Cal. 2011) .................................................13

*FTC v. Commerce Planet, Inc.*,
   878 F. Supp. 2d 1048 (C.D. Cal 2012) ( .......................................23

*Laster v. T-Mobile USA, Inc.*,
   2009 WL 4842801 (S.D. Cal. Dec. 14, 2009) *vacated in part by Laster v. T-Mobile USA, Inc.*, 466 Fed. Appx. 613 (9th Cir. 2012)...........................14

*Lierboe v. State Farm Mut. Auto. Ins, Co.*,
   350 F.3d 1018 (9th Cir. 2003)....................................................25

*Mahfood v. QVC, Inc.*,
   2008 U.S. Dist. Lexis 105229, at *3-*4 (C.D. Cal. Sept. 22, 2008).......13, 14

*Ogden v. Bumble Bee Foods, LLC*,
   292 F.R.D. 620 (N.D. Cal. 2013) .................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ................................................8, 9, 13, 20

*Wilson v. Frito-Lay N. Am.*,
   2013 WL 5777920 (N.D. Cal. Oct. 24, 2013) ...............................24

**STATE CASES**

*Akkerman v. Mecta Corp., Inc.*,
   152 Cal. App. 4th 1094 (2007)....................................................18

*Alliance Mortg. Co. v. Rothwell*,
   10 Cal. 4th 1226 (1995)..............................................................24

*Clark v. Superior Ct.*,
   50 Cal. 4th 605 (2010)................................................................22

*Cortez v. Purolator Air Filtration Prods. Co.*,
   23 Cal. 4th 163 (2000)................................................................22

*Davis-Miller v Auto. Club of S. Cal.*,
  201 Cal. App. 4th 106 (2011) ................................................................ 13

*Day v. AT&T Corp.*,
  63 Cal. App. 4th 325 (1998) .......................................................... 22, 23

*Fairbanks v. Farmers New World Life Ins. Co.*,
  197 Cal. App. 4th 544 (2011) .............................................................. 13

*Feitelberg v. Credit Suisse First Boston, LLC*,
  134 Cal. App. 4th 997 (2005) ................................................. 15, 22, 23

*Kaldenbach v. Mut. of Omaha Life Ins. Co.*,
  178 Cal. App. 4th 830 (2009) ......................................................... 13, 19

*Knapp v. AT&T Wireless Servs., Inc.*,
  195 Cal. App. 4th 932 ...................................................................... 18, 19

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ......................................................................... 22

*Pfizer, Inc. v. Superior Ct.*,
  182 Cal. App. 4th 622 (2010) .............................................................. 18

*Richardson v. Roberts*,
  210 Cal. App. 2d 603 (1962) ............................................................... 23

*Sevidal v. Target Corp.*,
  189 Cal. App. 4th 905 (2010) ......................................................... 17, 18

*Tucker v. Pac. Bell Mobile Servs.*,
  208 Cal. App. 4th 201 (2012) .......................................... 13, 18, 19, 22

*In re Vioxx Class Cases*,
  180 Cal. App. 4th 116 (2009) ......................................................... 18, 19

*Woodard v. May Dept. Stores Co.*,
  1990 WL 322653 (Colo. Dist. Ct. June 27, 1990) .......................... 16

**STATUTES AND RULES**

Business and Professions Code § 17501 ..................... 10, 11, 12, 13, 14

Cal. Civ. Code § 1780(a)) ........................................................................ 24

Cal. Civ. Code § 3343 ............................................................................... 24

Fed. R. Civ. P. Rule 23 ...................................... 1, 8, 9, 20, 21, 25

**OTHER AUTHORITIES**

Atty. Gen. Opinion No. 57-126 (Sept. 24, 1957) ............................. 10

Report of the Attorney General's Committee on Sale and Comparative Price
  Advertising (April 1984) ...................................................................... 12

**Introduction**

Rule 23 "imposes stringent requirements for certification that in practice exclude most claims." *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013). This case is not one of the few that satisfy those requirements. Indeed, this lawsuit is spectacularly ill suited to certification as a class action. It is a false advertising lawsuit asserting that the "regular" or "original" prices in Kohl's comparative price advertisements were fictitious, and seeks to certify a class of all California consumers who bought any of Kohl's private or exclusive branded products since 2006. In the class period, Kohl's has offered for sale a staggering array of different types of items under its private or exclusive brands -- ███████ ███████████  To recover, plaintiffs will have to prove the falsity of the "regular" or "original" prices listed in hundreds of thousands of different advertisements for those different types of items. Plaintiffs will then have to show that each potential class member (and there are millions) not only was deceived by an alleged false advertisement but relied on it in making his or her purchasing decision. Finally, to show entitlement to restitution, each purported class member will have to show that the amount he or she paid for each item exceeds its actual value.

Plaintiffs bear the burden of affirmatively demonstrating their compliance with Rule 23 through "evidentiary proof." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). They have failed to satisfy their burden. They have no way to establish, on a common basis, (1) the falsity of the hundreds of thousands of different advertisements in issue, (2) that the millions of consumers in the proposed class were deceived by, and relied on, those advertisements, and (3) that those consumers are entitled to restitution.

In addition, neither of the named plaintiffs satisfies the standard for typicality and adequacy of representation because they cannot establish essential elements of their claims and because they seek to represent a class of consumers who bought a vast assortment of products dissimilar to the products bought by the named plaintiffs.

**Factual Background**

Kohl's is a nationwide family-oriented department store chain that sells moderately priced apparel, footwear and accessories for women, men and children; soft home products such as sheets and pillows; and housewares.  It operates 1,150 stores in 49 states; 128 of those stores are in California.  It also sells goods online at Kohls.com.  Dec. of Kristine Vranak ("Vranak Dec.") ¶ 2, filed concurrently.  Kohl's product offerings include quality private and exclusive brands that, since 2011, have accounted for 50% or more of the total revenue and merchandise mix at Kohl's.  Vranak Dec. ¶ 3. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

The types of products sold under those brands include, among many others, the following:

- **Home**:  Hand mixers, bakeware, mixing sets, cooking tools, pots and pans, kitchen knives, serving trays, table clothes, pitchers, decanters, wine glasses, wine bottle covers, corkscrews, pepper grinders, cutting boards, plates and bowls, serving dishes, silverware, drinkware and glasses, kitchen towels, table cloths, and fine china

- **Bed and bath**:  Bedding, bed skirts, pillows, decorative pillows, shower curtains, towels, soap pumps, and toothbrush holders

- **Furniture**:  Ottomans, rugs, picture frames, end tables, book cases, table sets, stools, curtains, LED candles, wax candles, and lanterns

- **Outerwear**:  Men's and women's coats and jackets

- **Women**:  Cardigans, sweaters, jackets, t-shirts, flannels, scarves, pajamas, robes, dresses, pants, skirts, shorts, bathing suits, bikinis, tights, sweat pants, blouses, tank tops, socks, camisoles, jeans, button-down shirts, polos, workout clothes, bras, and underwear

- **Men**:  Flannels, long sleeve t-shirts, t-shirts, workout clothes, polos, sweaters, jeans, button down shirts, suits, dress pants, sports coats, dress shirts, ties, shoes, cardigans, hats, scarves, jackets, vests, shorts, and swimming suits

MEMORANDUM OF DEFENDANTS KOHL'S CORPORATION AND KOHL'S DEPARTMENT STORES, INC. IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

- **Juniors**:  Jeans, sweaters, leggings, dresses, cardigans, blouses, skirts, button-down shirts, shorts, bikinis, swimming suits, underwear, bras, scarves and hats

- **Guys**:  Sweaters, pants, long-sleeve t-shirts, t-shirts, belts, hats, shorts, swimming suits, jackets, dress shirts, suits, shoes, polos, vests, button-down shirts, underwear, and socks

- **Kids**:  Shoes, jeans, polos, t-shirts, long-sleeve t-shirts, underwear, socks, pants, skirts, tights, t-shirts, sweaters, and pajamas

- **Jewelry**:  Rings, earrings, necklaces, and pendants

Vranak Dec. ¶ 4.

Plaintiffs Cheryl Long and Darren Drouin purport to bring this class action on behalf of all California consumers who, between August 5, 2006 to the present, purchased Kohl's "private or exclusive branded items" for "at least 30% off of the stated 'original' or 'regular' price."  SAC ¶ 45.  The number of different items and transactions this definition captures is staggering.  ███████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████

### A.   <u>Advertising And Promotions At Kohl's</u>

Kohl's often uses comparative price advertising in fliers, circulars, online, and on signage and stickers at the store.  *Id.* ¶ 10.  These ads list a "regular" or "original" price for an item, along with a "sale" price.  *Id.*  In stores, signage at fixtures "prominently display[s]" sale prices in large font, and states the "original" or "regular" price in "very small font."  Ex. I (Dep. of Cheryl Long) at 175:21-176:13.

---

[1] ████████████████████████████████████████████████████████

MEMORANDUM OF DEFENDANTS KOHL'S CORPORATION AND KOHL'S DEPARTMENT STORES, INC. IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1  ███████████████████████████████████████

2  ███████████████████████████████████

3  ██████████████████████████  ███████████████

4  ████████████████████████████████████  Kohl's print

5  advertising and website discloses to consumers that this is how it uses these terms.

6  Vranak Dec. ¶ 12; Ex. C (Circular) at 63.

7  ███████████████████████████████████████

8  ███████████████████████████████████████

9  Moreover, the sale price at Kohl's is rarely the out-the-door price that a Kohl's

10  shopper actually pays because Kohl's frequently offers promotions and incentives

11  that reduce the purchase price even further.  Vranak Dec. ¶ 14.  For example, Kohl's

12  has a branded charge card that earns members periodic percentage-off discounts

13  based on the amount that they spend.  *Id.*  In addition, Kohl's periodically mails or

14  emails coupons to consumers or publishes coupons in periodicals.  Kohl's also allows

15  consumers to earn "Kohl's Cash" that they may use to reduce the purchase price.  *Id.*

16  Plaintiff Cheryl Long, whose claim is based entirely on her allegation that the coat

17  she bought was advertised with a "regular" $220 price and a "sale" price of $88,

18  actually paid only $70 for her coat.  SAC ¶ 42; Ex. I at 162:19-23.  As recently noted

19  by one Kohl's shopper:  "forget the original price and forget the sale price.  It's what

20  you're actually saving with the coupon" that matters.[3]  Dec. of David W. Stewart

21  ("Stewart Dec.") ¶ 33 at 15:3-6, filed concurrently.

---

[2] ████████████████████████████████████████████████████████████████████████████████████████████████████████

[3] In connection with this lawsuit, a professor of marketing retained by Kohl's conducted two focus group sessions with Kohl's shoppers where the topic for discussion was consumer decision making.  Stewart Dec. ¶ 30; *supra* at 6-7.

MEMORANDUM OF DEFENDANTS KOHL'S CORPORATION AND KOHL'S DEPARTMENT STORES, INC.
IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**B.**   <u>**Pricing At Kohl's**</u>



█████████████████████████████████████████████

█████████████████████████████████████████████

### C.   Return Policy At Kohl's

Kohl's has an extremely liberal, hassle-free return policy.  Vranak Dec. ¶ 19. Any customer dissatisfied with his or her purchase, for any reason, may return it and get a refund.  There is no time restriction on returns and merchandise may be returned with or without a receipt.  *Id*.; Ex. E (Kohl's Return Policy).

### D.   The Buying Decisions Of Kohl's Shoppers Are Highly Individualized And Are Not Necessarily Influenced By Advertised "Regular" or "Original" Prices

In the words of named plaintiff Cheryl Long:  "[C]onsumers have different approaches to shopping, based on their own opinions."  Ex. I at 65:13-15.  All sorts of different factors can influence consumers' buying decisions, including need, quality, style, design, fit, size, color, return policy, and price.  Stewart Dec. ¶¶ 16 & 17. Consumers balance these and other factors in different ways from purchase to purchase.  *Id*.

With respect to price, the academic literature on comparative pricing indicates that:  "[C]onsumers respond to prices and information about prices, including advertised and posted reference pricing, in many varied and complex ways.  There is no basis for concluding that consumers respond in a uniform manner to such information.  There is also ample evidence that consumers understand the pricing practices of retailers.  Consumers rely on pricing information from a variety of sources and frequently discount information about reference prices that is provided by retailers."  Stewart Dec. ¶ 15.A.

Focus groups consisting of actual Kohl's shoppers confirm that there is no uniform response to comparative price advertising.  Some Kohl's shoppers pay little to no attention to "regular" or "original" prices in making their buying decisions; others do not necessarily believe the price comparisons.  Stewart Dec. ¶¶ 15.C. & 33. For example, focus group participants stated:

- "I just don't think it has much weight.  I mean, the price is what it is.  It doesn't matter to me what it used to be.  I don't think I really pay attention that much to the original price."

- "But I think that's why as a consumer I don't pay attention that much to the original price, because it's still just dependent on what I'm willing to pay for the item and what the final price is."

- [Moderator:  "Do you ever not believe the original price?"]  Participant:  "Yeah."

- "Sometimes you see the sale price and you know that's a good price and you don't really notice what the original price was."

- "I think I see it [the original price] but I don't give it very much weight.  It doesn't really matter to me."

- "I think the sale price, the coupon and the rewards influence my decision more than the original price.  All those things combined are like 90 percent or 95 percent of my decision-making versus 5 percent of the original price."

- The most important price is "[t]he end price that you walk out of there paying."  "The price you paid."

Stewart Dec. ¶ 33.

███████████████████████████████████████

███████████████████████████████████████████

████████████████████████

### E.  <u>Drouin's Claims</u>

Drouin claims in his complaint that he bought several items that fall within the class definition (SAC ¶¶ 37-40), but does not offer any proof of this in the motion for class certification.  He also alleges that "[a]bsent Kohl's false representations of a price discount, [he] would not have purchased any of the items that he purchased from Kohl's."  *Id.* at ¶ 40.  At his deposition, however, he backtracked, and admitted that he might have bought two of the items even if they were not advertised with a comparative "regular" or "original" price.  Ex. H (Dep. of Darren Drouin) at 231:25-233:5.  Drouin does not believe that he could have bought items comparable to the items he bought at Kohl's for less elsewhere.  *Id.* at 178:24-179:7.

### F.   Long's Claims

Long alleges in the complaint that she purchased a single item, a herringbone wool coat, that falls within the class definition.  SAC ¶ 42.  She also alleges that "[a]bsent Kohl's false representations of a price discount, . . . [she] would not have purchased the coat."  SAC ¶ 43.  However, Long's testimony fails to support this critical allegation.  Ex. I at 152:4-153:4 (answering "I don't know" to the question of whether she would have bought the coat if it was not advertised with a comparative "original" price.)   Long paid $70 for the coat and believed the coat was worth the amount she paid.  *Id.* at 246:10-16.

### Argument

### I.   THE LEGAL STANDARD

The class action "is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes* ("*Wal-Mart*"), 131 S. Ct. 2541, 2550 (2011).  "To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23," through "evidentiary proof."  *Comcast*, 133 S. Ct. at 1432.  This "evidentiary proof" must establish that there are "*in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by 23(a)."  *Id.* (emphasis in original).  When, as here, the plaintiff seeks certification under Rule 23(b)(3), he or she must also show with "evidentiary proof" that "questions of law or fact common to class members predominate over any questions affecting only individual members."  *Id.* at 1436 (quoting Fed. R. Civ. P. 23(b)(3)).

Rule 23 "imposes stringent requirements for certification that in practice exclude most claims."  *Italian Colors Rest.*, 133 S. Ct. at 2310.  Certification is appropriate only if the trial court is satisfied, after a "rigorous analysis," that the requirements of Rule 23(a) and 23(b)(3) have been satisfied.  *Comcast*, 133 S. Ct. at 1432.  This analysis will "frequently entail 'overlap with the merits of the plaintiff's

underlying claim,'" because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.*

This opposition focuses on the commonality, predominance, typicality and adequacy of representation requirements. To satisfy the commonality requirement of Rule 23(a), plaintiffs have to show the "capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 131 S. Ct. at 2551 (emphasis in original); *see id.* (plaintiff must prove a "common contention" that is "of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."). The predominance requirement of 23(b)(3) is an "adventuresome innovation" that is "even more demanding than Rule 23(a)[,]" requiring courts to "take a 'close look' at whether common questions predominate over individual ones." *Comcast*, 133 S. Ct. at 1432. To establish typicality and adequacy of representation, plaintiffs must prove that their claims and the class claims "are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 131 S. Ct. at 2551 n.5.

## II. PLAINTIFFS CANNOT ESTABLISH COMMONALITY OR PREDOMINANCE

This is a false advertising case seeking restitution under the UCL and FAL and damages under the CLRA. Each claim in the SAC is premised on the contention that Kohl's falsely represented its "regular" or "original" prices in its advertising for its private and exclusive branded products.[4]

---

[4] *See* SAC ¶ 55 (first cause of action, for violation of the UCL's "unfair" prong: "Kohl's . . . inflated the purported 'regular' or 'original' prices for such products such that the promised discount is false, misleading and deceptive"); *id.* ¶ 62 (second cause of action, for violation of the UCL's "fraudulent" prong: Kohl's "regular" and "original" prices are "false"); *id.* ¶72 (third cause of action, for violation of the UCL's "unlawful" prong: Kohl's "purported former prices were, in fact, not the prevailing market prices. . . ."); *id.* ¶ 77 (fourth cause of action, for violation of the FAL:

(Footnote Cont'd on Following Page)

To recover on any of their claims, plaintiffs will have to prove (1) the falsity of the "regular" or "original" price in the advertisements, (2) a causal link between the false statement and the purported class member's decision to buy the product, and (3) entitlement to restitution. *See infra* at Sec. II.A., B., & C. As Kohl's shows below, plaintiffs have no way to establish any of these essential elements on a classwide basis. Rather, each issue will require hundreds of thousands, or millions, of individualized determinations.

**A.    Plaintiffs Cannot Establish Falsity On A Classwide Basis**

**1.    The FAL Claim Requires Hundreds Of Thousands Of Individualized Determinations Of Truth Or Falsity**

Plaintiffs' FAL claim is based on section 17501 of the False Advertising Law, which states, in relevant part, that:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement….

Although no cases have construed the phrase "prevailing market price," the California Attorney General gave it a common sense construction in an official Attorney General's Opinion:  "the phrase 'prevailing market price' contained in section 17501 of the Business and Professions Code means the *predominating price that may be obtained for merchandise similar to the article in question on the open market and within the community where the article is sold*."  Ex. L (Atty. Gen. Opinion No. 57-126 (Sept. 24, 1957)) at 147 (emphasis added).

---

(Footnote Cont'd From Previous Page)
"Kohl's 'regular' or 'original' prices . . . are materially greater than the true prevailing prices of those products"); *id.* ¶ 83 (fifth cause of action, for violation of the CLRA: "Kohl's inflated the purported 'regular' and 'original' prices….").

Hundreds of thousands of different price comparisons for different items are encompassed within plaintiffs' class definition. *See supra* at 3. To prove that Kohl's violated section 17501 with respect to the entire class, plaintiffs will have to prove, for each price comparison, that Kohl's "regular" or "original" price for that particular item exceeded the "prevailing market price" for such item in the "locality wherein the advertisement is published." Thus, plaintiffs will have to prove that a spatula's $8.99 "regular" price was not the "prevailing market price" for that item, that a candle's $4.99 "regular" price was not the "prevailing market price" for that item, that a blouse's $24.99 "original" price was not the "prevailing market price" for that item, and on and on, virtually ad infinitum. And, since plaintiffs are seeking certification of a California-wide class, comprised of hundreds of localities, plaintiffs will have to prove all this for *each* locality.

Realizing that this raises an insurmountable obstacle to certification, plaintiffs attempted to overcome this problem by changing their class definition at the last minute. One week before their class certification motion was due, plaintiffs filed an amended complaint that changed the proposed class definition from California purchasers of "apparel or luggage" to California purchasers of Kohl's "private or exclusive branded items." *Compare* FAC ¶ 37, *with* SAC ¶ 45. Plaintiffs contend (in an argument that is spelled out only in their expert's report) that under this new proposed definition they should be entitled to prove "prevailing market value" by looking *only* to Kohl's "own historical sales data." Dec. of Brian J. Bergmark ("Bergmark Dec.") ¶ 18, filed Nov. 6, 2013. Their argument is that the "most commonly occurring" price at which Kohl's actually sells an item should be deemed the "prevailing market price" for that item, *regardless* of the prices at which competing retailers sell comparable merchandise.[5]

---

[5] This purported "method" for determining "prevailing market price" simply creates a self-fulfilling prophecy that will virtually always result in the "original" or "regular" price being higher than the "prevailing market price." Because most shoppers will buy at the lower "sale" price rather than the "original" or "regular" price, the "most

(Footnote Cont'd on Following Page)

MEMORANDUM OF DEFENDANTS KOHL'S CORPORATION AND KOHL'S DEPARTMENT STORES, INC. IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs are wrong.  Changing the mix of products subject to the class definition cannot change the legal meaning of "prevailing market value."  Under that meaning, determining "prevailing market value" requires an inquiry into "the predominating price that may be obtained for *merchandise similar to the article in question on the open market. . . .*"  Plaintiffs do not, and cannot, dispute that merchandise "similar" to products sold under Kohl's private and exclusive brands are available at competing retailers -- for example, a white polo shirt sold by Kohl's versus a white polo shirt sold by Macy's.  Indeed, their complaint *admits* this to be the case.  SAC ¶ 6  (contending that Kohl's has induced purchasers of Kohl's private and exclusive branded products "to refrain from shopping for *the same or similar products* from competitors of Kohl's"); *see also* Ex. F. (Dep. of Brian J. Bergmark) at 47:5-16 (admitting that he has no basis for disputing that the same or similar products are sold elsewhere).  Plaintiffs are not entitled to ignore the legal (and common sense) definition of "prevailing market value" simply because it would make things easier for them.

Plaintiffs do not and cannot offer any legal authority to support their contention that it is appropriate to ignore the prices of merchandise "similar to the article in question on the open market" in determining "prevailing market value."  Their argument not only disregards the California Attorney General's Opinion, but a 1984 "Report of the Attorney General's Committee on Sale and Comparative Price Advertising," issued when the California Legislature was considering changes to section 17501.  Ex. M ( Report of Attorney General (April 1984).  The Report noted that statutes in other states, "*unlike* section 17501 . . . have taken the approach of tying comparison price advertising to a seller's own 'regular' price and not some

---

(Footnote Cont'd From Previous Page)

commonly occurring" actual sale price will *always* be lower than the "original" or "regular" price.  Thus, in plaintiffs' view, the only way to avoid liability under section 17501 is for the "original" or "regular" price to equal the "most commonly occurring" actual sale price.  This would eliminate comparative advertising, a form of advertising that is widely used and perfectly legal.

MEMORANDUM OF DEFENDANTS KOHL'S CORPORATION AND KOHL'S DEPARTMENT STORES, INC. IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

'prevailing market price'." *Id.* at 249.  The report went on to recommend *repealing* section 17501 and replacing it with a statute tying comparison price advertising to a seller's own former price.  *Id.* at 271-74.  The Legislature never acted on the advice.

Plaintiffs' expert also claims it is appropriate to rely exclusively on Kohl's own sales data to determine "prevailing market price" because Kohl's supposedly "uses" the terms "regular" or "original" to refer only to its own former prices and not competitors' prices.  Bergmark Dec. ¶ 18.  Plaintiffs are simply wrong:  the undisputed record shows that Kohl's "regular" or "original" prices can refer to prices of comparable merchandise sold by competitors.  *See supra* at 4.  This is announced in ████████████████████, on Kohl's website, and in advertising circulars and newspaper inserts.  *Id.* ████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████

This case is fundamentally different than a false advertising case where certification is sought on the basis of just one false statement concerning a single product, such as, for example, a claim that a food product is "all natural."  There, the determination of truth or falsity can be determined "in one stroke."  *Wal-Mart*, 131 S. Ct. at 2551.  Here, it can only be determined through hundreds of thousands of separate "strokes."  As California courts have repeatedly held with regard to UCL or FAL lawsuits based on fraud, a plaintiff seeking certification must show that the defendant "engaged in *uniform* conduct likely to mislead *the entire class*."  *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 227 (2012) (emphasis added).[6]
Plaintiffs have no such proof, and thus cannot show commonality or predominance.

---

[6] *See also Fairbanks v. Farmers New World Life Ins. Co.*, 197 Cal. App. 4th 544, 562 (2011); *Davis-Miller v Auto. Club of S. Cal.*, 201 Cal. App. 4th 106, 121 (2011); *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850 (2009); *In re Countrywide Fin. Corp. Mortg. Marketing and Sales Practices Litig.*, 277 F.R.D. 586, 608 (S.D. Cal. 2011).

The opinion in *Mahfood v. QVC, Inc.*, is instructive.  There, plaintiff alleged that QVC's comparative pricing advertisements were false because the "Retail Value" stated by QVC for its products was inflated.  2008 U.S. Dist. Lexis 105229, at *3-*4 (C.D. Cal. Sept. 22, 2008).  The court denied certification because, among other things, plaintiff would need to establish that the "Retail Price" for each item sold by QVC was false.  *Id.* at *12; *see also id.* at *14 ("The court agrees with defendant that there is no . . . single practice, policy or defect affecting all of Plaintiff's proposed class members in the same way.").

The only case plaintiffs cite in support of certification of their section 17501 claim is *Brazil v. Dell, Inc.*, 2010 WL 5387831 (N.D. Cal. Dec. 21, 2010), which plaintiffs characterize as involving "virtually identical claims" to those asserted here.  Pls.' Mem. at 11.  However, plaintiffs do not disclose that *Brazil* did not even involve a section 17501 claim.  *Brazil* thus never addressed the insurmountable problem plaintiffs have here of establishing the "prevailing market price" under 17501 for hundreds of thousands of different items.

## 2.  The UCL "Unlawful" Claim Requires Hundreds Of Thousands Of Individualized Determinations Of Truth Or Falsity

Plaintiffs' claim under the "unlawful" prong of the UCL is based on their assertion that Kohl's alleged conduct violates the Federal Trade Commission Act ("FTCA").  But the language they rely on, and repeatedly identify as from the FTCA (Pls.' Mem. 13-14), is actually not even in the FTCA.  It instead appears in "guidelines" from the FTC that are published in the Federal Register.  SAC ¶ 69.  These "guidelines" cannot form the predicate for a cause of action under the UCL's "unlawful" prong.  *See Laster v. T-Mobile USA, Inc.*, 2009 WL 4842801, at *5 n.1 (S.D. Cal. Dec. 14, 2009) *vacated in part by Laster v. T-Mobile USA, Inc.*, 466 Fed. Appx. 613 (9th Cir. 2012).  A claim cannot be certified for class treatment if there is no legal basis for it.  *See Comcast*, 133 S. Ct. at 1434-35.

1      Even if these guidelines had the force of law, certification would be improper.

2   The guidelines state that:

3          "One of the most commonly used forms of bargain
           advertising is to offer a reduction from the advertiser's own
4          former price for an article. . . .  If the former price being
           advertised is not bona fide but fictitious -- for example,
5          where an artificial, inflated price was established for the
           purpose of enabling the subsequent offer of a large
6          reduction -- the purchaser is not receiving the unusual value
           he expects.

7
           A former price is not necessarily fictitious merely
8          because no sales at the advertised price were made.  The
           advertiser should be especially careful, however, in such a
9          case, that the price is one at which the product was openly
           and actively offered for sale, for a reasonably substantial
10         period of time. . . ."

11  16 C.F.R. § 233.1(a)-(b).  Several insurmountable obstacles to certification are

12  apparent from this language.

13      *First,* this FTC guideline only applies to the advertiser's "former" price.  But

14  the evidence is undisputed that Kohl's "regular" or "original" prices do *not*

15  necessarily refer to Kohl's own former prices.  They can also refer to the prices of

16  comparable items offered by competitors.  *See supra* at 4.  Thus, for each of the items

17  and corresponding advertisements encompassed by the class definition, plaintiffs

18  would have to identify whether the price comparison referred to a competitor's price

19  or Kohl's former price -- otherwise the class would be overbroad.  ████████████

20  ██████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████

22  ████████████████████████████████████

23      *Second*, just as with their FAL claim, determining the truth or falsity of any

24  specific advertisement is an utterly individualized undertaking.  The guidelines speak

25  in terms of "fictitious," "artificial," and "inflated" former prices.  There is simply no

26  way to determine "in one stroke" whether the "original" or "regular" prices of the

27  items within the class definition were "fictitious," "artificial," or "inflated."  For

28  example, if the "regular" or "original" price at which Kohl's offers an item is in line

- 15 -

with the prices at which competing retailers offer comparable merchandise, one cannot say the price is "fictitious."  This showing would have to be made on an item-by-item basis.

Plaintiffs contend they can prove a classwide "violation" of the FTC guidelines simply by (1) examining Kohl's internal guidelines to determine if Kohl's "offers products at 'Regular' or 'Original' prices for a reasonable period of time," and (2) showing that Kohl's "has no bona fide and good faith intention of selling a reasonable quantity of products at regular price."  Pls.' Mem. at 14.  But there is nothing in the FTC guidelines suggesting that the determination of whether a price is "artificial" and "inflated" may be made in a vacuum, without consideration of whether the price is consistent with the prevailing market price.  Indeed, the only opinion construing the FTC guidelines cited by plaintiffs -- a 1990 decision by a Colorado trial court -- considered it significant that defendant's "regular" prices were "*substantially higher than its competitors' prices* for the same merchandise." *Woodard v. May Dept. Stores Co.*, 1990 WL 322653, at *10 (Colo. Dist. Ct. June 27, 1990).[7]  ████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████Finally, even accepting plaintiffs' contention that the issue of Kohl's "bona fide and good faith intention of selling a reasonable quantity of products at a regular price" is a relevant consideration, plaintiffs offer no credible plan for how they intend to prove Kohl's "intentions" regarding each product it sells on a classwide basis.  ███████████ ████████████████████████████████████████ ██████████████████████████████████

---

[7] The *Woodard* decision is unhelpful to plaintiffs for the additional reason that it did not involve a class action and decided no class action issues.

### 3.   The UCL "Unfair" And "Fraudulent" Claims And The CLRA Claim Require Hundreds Of Thousands Of Individual Determinations Of Truth Or Falsity

According to plaintiffs, the proof needed to establish their claims for violation of the UCL's "fraudulent" and "unfair" prongs and the CLRA is essentially identical: they must show that the "regular" and "original" prices (1) "are not used for a reasonable period of time," and (2) "they do not result in a reasonable number of sales at those prices." Pls.' Mem. at 11 (discussing alleged CLRA standard); *see id*. at 15-16 (discussing similar alleged standard for "unfair" and "fraudulent" prongs). But no such language appears in the CLRA or in the UCL. Nor do plaintiffs cite any case law or other legal authority indicating that this is the standard. There is no reason for the Court to accept this invented standard.

In any event, even assuming this to be the proper standard, plaintiffs cannot show commonality or predominance. The determination of a "reasonable" period of time or number of sales is not a one-size-fits-all inquiry: what might be reasonable for one product may not be reasonable for another. Fifty pairs of diamond earrings might amount to a reasonable volume of sales at the "regular" price, but fifty candles might not. Product-by-product "reasonableness" determinations will be unavoidable.

These claims also suffer from the same infirmity as the UCL "unlawful" claim: they are based on the incorrect assumption that "regular" or "original" refers only to Kohl's former prices, when the undisputed evidence shows that these terms can also refer to a competitor's prices. *See supra* at 4. In other words, when Kohl's uses "regular" to refer to a competitive market price, the advertising will necessarily be truthful so long as Kohl's is accurately stating that price, *regardless* of whether or for how long Kohl's sold products at that price.

### B.   Plaintiffs Cannot Establish Causation On A Classwide Basis

Plaintiffs seeking monetary relief under the UCL, FAL and CLRA must establish "some connection between the defendant's alleged improper conduct and the unnamed class members who seek restitutionary relief." *Sevidal v. Target Corp.*,

189 Cal. App. 4th 905, 924 (2010); *see Campion v. Old Republic Home Prot. Co., Inc.*, 272 F.R.D. 517, 534 (S.D. Cal. 2011) (under the UCL, a "causal link must exist between the alleged conduct and the alleged injury"), *and id.* at 537 (under the CLRA, "actual reliance must be established.")  Where there is "no likelihood" that a plaintiff was deceived by the alleged false advertising, that plaintiff has no entitlement to monetary relief.  *Pfizer, Inc. v. Superior Ct.*, 182 Cal. App. 4th 622, 632-33 (2010).  Were the rule otherwise, plaintiffs who were entirely uninfluenced and therefore uninjured by a defendant's conduct would be eligible for monetary awards.  This would result in a radical remedy unprecedented in the United States and utterly at odds with the "limited" monetary remedy authorized by the UCL and FAL. *See infra* at 22-23; *see also Akkerman v. Mecta Corp., Inc.*, 152 Cal. App. 4th 1094, 1101 (2007) (such an outcome would create a "windfall" for plaintiff).

If the issue of causation or reliance "is a matter that would vary from consumer to consumer," certification is improper.  *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009); *see also Sevidal*, 189 Cal. App. 4th at 929  (rejecting certification where causation requires individualized proof); *Tucker*, 208 Cal. App. 4th at 225 (same).  In these circumstances, the issue of causation or reliance is not "subject to common proof," and commonality and predominance cannot be established.  *Vioxx*, 180 Cal. App. 4th at 129*; see also Knapp v. AT&T Wireless Servs., Inc.*, 195 Cal. App. 4th 932, 943 (where class members "stand in a myriad of different positions" with respect to the "essential allegations" of the complaint, certification is inappropriate).

These principles require the denial of this motion.  Plaintiffs have submitted no "evidentiary proof" (*Comcast*, 133 S. Ct. at 1432) showing that causation or reliance may be established on a common basis.  Indeed, their motion ignores this issue altogether.  They have accordingly failed to satisfy their burden to affirmatively demonstrate commonality or predominance with respect to this essential element of their claims.

Certification is unwarranted not simply because plaintiffs have failed to satisfy their burden on this issue, but also because the record directly rebuts any contention that reliance or causation could be established on a common basis.  The *only* evidence in the record shows that the buying decisions of consumers, including Kohl's shoppers, are highly individualized.  Some shoppers pay no attention to the "regular" or "original" prices in making their buying decisions, and focus on other factors, such as quality, convenience, and the "out the door" price they will have to pay.  Stewart Dec. ¶ 34.  Other shoppers do not believe or are skeptical of the "original" or "regular" prices.  Other shoppers may be influenced by price comparisons with respect to certain of their purchases but not others.  There is, simply put, no uniform consumer response to an "original" or "regular" price.  *Id*.  Determining whether Kohl's price comparisons influenced a consumer's purchasing decisions will require individualized inquiries.

Plaintiffs have stated (in their complaint, not in their certification motion) that reliance may be "presumed as a matter of law" because Kohl's alleged misrepresentations are "material."  SAC ¶ 10.  This argument fails for three reasons.

First, no class wide presumption or inference of reliance can "come into play absent evidence of *uniform* material misrepresentations having been actually made to class members."  *Kaldenbach*, 178 Cal. App. 4th at 851 (emphasis added); *see also Knapp*, 195 Cal. App. 4th at 946 ("when the *same* material misrepresentations have actually been communicated to each member of a class, an inference of reliance arises as to the entire class.").  This case involves hundreds of thousands of different alleged misrepresentations.  *See supra* at 3.

Second, "the rule permitting an inference of common reliance where material misstatements have been made to a class of plaintiffs *will not arise where the record will not permit it*."  *Tucker*, 208 Cal. App. 4th at 228 (emphasis added); *see also Vioxx*, 180 Cal. App. 4th at 129 ("if the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject to common proof,

and the action is not properly certified as a class action."). Here, the only evidence in the record shows that there is no uniform consumer response to "original" or "regular" prices in advertising, and that for a substantial number of Kohl's shoppers comparison price advertising does not influence their purchasing decisions. Stewart Dec. ¶ 34. The record in this case accordingly does "not permit" any class wide inference of reliance. It would be perverse to *presume* that every class member relied on the alleged false advertising, when the *evidence* affirmatively shows that *not* to be the case. That would simply result in windfall awards to uninjured class members.

Third, even if plaintiffs could overcome the foregoing hurdles to create a presumption of common reliance (and they cannot), such a presumption would not be irrebuttable. In an individual case, Kohl's would have the right to rebut the presumption by showing lack of causation or reliance with respect to the plaintiff. Kohl's necessarily has the same right with respect to absent class members in a class action. Depriving Kohl's of that right would violate the Rules Enabling Act, which "forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" *Wal-Mart*, 131 S. Ct. at 2561.[8]

## C.   Plaintiffs Cannot Establish Restitution On A Classwide Basis

Under *Comcast*, a class action seeking monetary relief must show, with "evidentiary proof," that such relief is "capable of measurement on a classwide basis." 133 S. Ct. at 1432, 1433. Without such a showing, plaintiffs "cannot show Rule 23(b)(3) predominance." *Id*. at 1433. The court explicitly rejected the proposition that "*any* method of measurement is acceptable so long as it can be

---

[8] The absent class members will also be subject to a class waiver defense that must be adjudicated on an individualized basis. Since April 4, 2013, all Kohl's receipts direct customers to Kohl's website and explicitly state that all purchases are subject to "the terms/conditions found in legal notices at Kohls.com." Vranak Dec. ¶ 8. Among other things, the legal notices provide that: "There shall be no right or authority for any dispute to be litigated on a class action or consolidated basis." *Id*.; Ex. B. Absent class members who were aware of this condition and thereafter returned to shop at Kohl's should be barred from participating in a class action against Kohl's. Whether class members were aware of this condition is an individualized issue.

applied classwide, no matter how arbitrary the measurements may be," because that would contradict the settled principle that the court must inquire "into the merits of the claim" if necessary to determine whether Rule 23 is satisfied. *Id.* Thus, in *Comcast*, the court reversed a decision certifying a consumer class because plaintiffs' damages model was partially based on theories of recovery that were not legally available to plaintiffs, and accordingly could not establish that damages "are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.*

Plaintiffs here have similarly failed to establish that restitution is capable of measurement on a classwide basis, because (as we show below) none of their theories of monetary recovery provides a legally cognizable measure of restitution. Rather, each of their theories would confer an award of *non*-restitutionary disgorgement and an improper windfall. Under the appropriate measure for restitution under California's consumer protection statutes, questions of individual monetary determinations would overwhelm questions common to the class -- which explains why plaintiffs have failed even to proffer any theory of recovery that relies on this proper measure.

Plaintiffs proffer three proposed theories for calculating what they call "restitution." The first theory simply seeks a full refund of the purchase price. Bergmark Dec. ¶ 26. The second theory would apply the advertised discount off the "regular" or "original" price to the "actual most prevalent price received by Kohl's for that product" and award that amount to each plaintiff. *Id.* ¶ 28. Thus, if the "actual most prevalent price" for a coat was $100, and the advertised discount off the "regular" price was 40%, the plaintiff would be entitled to an award of $40. *Id.* The third theory would award plaintiff the amount of profit that Kohl's earned on the particular item bought by the plaintiff. *Id.* ¶ 29.

As an initial matter, despite proffering these theories, plaintiffs say that the Court "need not presently decide on the proper measure of restitution, as it will have broad discretion to decide that issue after liability is established." Pls.' Mem. 21.

- 21 -

Particularly after *Comcast*, this is simply wrong.  *Comcast* plainly held that unless plaintiffs have a legally sufficient model that can measure monetary relief on a classwide basis, certification is inappropriate because Rule 23(b)(3) will not be satisfied.  133 S. Ct. at 1433.  Plaintiffs cannot sweep this critical issue under the rug in this manner.

Plaintiffs have no legally sufficient model for measuring monetary relief on a classwide basis.  There is no dispute between the parties that restitution is the only form of monetary relief available under the UCL and FAL, nor can there be.  *Clark v. Superior Ct.*, 50 Cal. 4th 605, 614 (2010) ("restitution is the only monetary remedy authorized in a private action brought under the unfair competition law").  Nor can there be any dispute that non-restitutionary disgorgement, punitive damages, and compensatory damages are also unavailable under these statutes.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)*; Clark*, 50 Cal. 4th at 610*; Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1009 (2005).  Rather, under the UCL and FAL, restitution is a limited remedy not intended to punish or create windfalls.  *See Korea Supply*, 29 Cal. 4th at 1152 (UCL and FAL strike a "balance . . . between broad liability and limited relief"); *see also Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000) (UCL and FAL were never intended to be "an all-purpose substitute for a tort or contract action").  That is why a "court cannot, under the equitable powers of [the UCL and FAL], award whatever form of monetary relief it believes might deter unfair practices."  *Korea Supply*, 29 Cal. 4th at 1148.

Restitution under the UCL and FAL "operates only to return to a person those *measurable amounts* which are *wrongfully taken* by means of an unfair business practice."  *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 339 (1998) (emphasis in original).  The purpose is to "restore the status quo ante as nearly as may be achieved" (*Cortez*, 23 Cal. 4th at 177) and to make the plaintiff "whole" within the limits of the statutes.  *Tucker*, 208 Cal. App. 4th at 229.  The California Supreme

Court has accordingly defined restitution as "the *return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received.*"  *Cortez*, 23 Cal. 4th at 174 (emphasis added).  By taking into account the "value of what the plaintiff received" in the transaction, this definition ensures that the "limited" remedy of restitution remains that way, and does not become a vehicle by which plaintiffs can improve upon the status quo and make themselves more than whole.  *See Richardson v. Roberts*, 210 Cal. App. 2d 603, 608 (1962) ("A court of equity does not sit to confer a windfall.").

Although plaintiffs describe their theories of recovery as "restitution," it is clear that under the foregoing authority plaintiffs are not actually seeking restitution.  Plaintiffs' inability to cite a single case supporting any of these theories as appropriate measures of recovery under the UCL and FAL underscores this conclusion.

*First*, plaintiffs' "full refund" theory would simply result in each plaintiff obtaining products for free:  he or she would get the product in issue *and* the return of the money spent to buy the product.  As plaintiffs' own damages expert acknowledged, this would make the plaintiff far *more* than whole and would amount to a "windfall."  Ex. F at 32:25-34:6.  Thus, far from being the "limited" remedy authorized by the Legislature, this theory of "restitution" would allow monetary awards so broad they are not even available under traditional tort actions.[9]

*Second*, the "value of the advertised discount" theory also bears no relation to true restitution.  It impermissibly ignores the "value of what the plaintiffs received" in the transaction and would thereby bestow windfalls on plaintiffs in the form of non-restitutionary disgorgement.  Restitution is limited to the return of those "measurable

---

[9] Plaintiffs cite a trial court opinion for the proposition that restitution entitles a plaintiff to "the full amount lost…"  Plaintiffs fail to mention that this case did not arise under the UCL or FAL and does not address the appropriate measure of recovery under those statutes.  *FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048 (C.D. Cal 2012) (analyzing equitable remedies available under FTC Act).

amounts which are *wrongfully taken*" from a plaintiff. *Day*, 63 Cal. App. 4th at 339 (emphasis added). This purported remedy has nothing to do with that measure.

*Third*, awarding each plaintiff an amount equal to the profit Kohl's earned on the particular item purchased is also not a restitutionary remedy. Instead, it is a form of non-restitutionary disgorgement that will create a windfall for plaintiffs who have already received a product that is equal to or greater in value than the amount they paid for it.

As the foregoing shows, plaintiffs have proffered no legally cognizable method for measuring restitution across the entire class. This alone requires denial of their motion. *Comcast*, 133 S. Ct. at 1433. But not only have plaintiffs failed to proffer such a method, they cannot do so. To determine entitlement to restitution, the Court would have to adjudicate the value of each of the products in issue here and compare it to the actual amount paid by each consumer (which can vary tremendously according to usage of coupons, "Kohl's Cash," and other individualized discounts) -- an individualized task that would overwhelm questions common to the class.[10]

## III.   DROUIN AND LONG ARE INADEQUATE AND ATYPICAL CLASS REPRESENTATIVES

A plaintiff who asserts class claims based both on products that he purchased and products that he did not purchase is an inadequate representative (and indeed, lacks standing to sue) unless the unpurchased products are "substantially similar" to the products he or she bought. *Wilson v. Frito-Lay N. Am.*, 2013 WL 5777920, at \*4 (N.D. Cal. Oct. 24, 2013); *see Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. 620,

---

[10] Although a CLRA claim authorizes an award of "damages" rather than restitution (Cal. Civ. Code § 1780(a)), plaintiffs do not in their memorandum address the question of monetary relief under the CLRA at all, much less claim that the standard is more favorable for them than the restitution standard under the UCL and FAL. They have not done so because the standards are essentially identical: both require plaintiffs to show "the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received." Cal. Civ. Code § 3343 (setting forth measure of damages in fraud cases); *see also Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1240-41 (1995).

626 (N.D. Cal. 2013) (question of substantial similarity of products is "better suited to the typicality and adequacy factors" of Rule 23(a) than to the issue of standing). Here, the class definition encompasses a vast array of different types of products, from ottomans to corkscrews, that are utterly dissimilar to the items bought by plaintiffs. *Supra* at 2-3.

Plaintiffs are inadequate and atypical class representatives for an additional, independent reason: they are both "subject to . . . unique defense[s] that [are] likely to become a major focus of the litigation." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006). Their deposition testimony (*supra* at 7-8) shows that neither named plaintiff can establish causation (with respect to plaintiff Long's only purchase and with respect to some of plaintiff Drouin's purchases) or entitlement to restitution (with respect to all purchases). *Lierboe v. State Farm Mut. Auto. Ins*, *Co.*, 350 F.3d 1018, 1020 (9th Cir. 2003) (class is "inadequately represented" where named plaintiff has "no cognizable claim.").[11]

### Conclusion

For the foregoing reasons, Kohl's respectfully requests that the Court deny plaintiffs' motion for class certification.

Dated:  December 13. 2013.                    ARNOLD & PORTER LLP

By:_____/s/ James F. Speyer_____
James F. Speyer
Attorneys for Defendants
Kohl's Corporation and Kohl's
Department Stores, Inc.

---

[11] In an effort to circumvent their inability to satisfy the predominance requirement of Rule 23(b)(3), plaintiffs suggest that the Court may certify a "liability only" class under Rule 23(b)(2). Pls.' Mem. 22.  Plaintiffs are wrong.  A "liability only" class must still satisfy all of the requirements of Rule 23(a), including commonality, typicality and adequacy of representation.  For all of the reasons set forth in this memorandum, and particularly in light of *Comcast*, plaintiffs cannot do so.

MEMORANDUM OF DEFENDANTS KOHL'S CORPORATION AND KOHL'S DEPARTMENT STORES, INC. IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION