STANLEY • IOLA, LLP
MATTHEW J. ZEVIN, SBN: 170736
225 Broadway, Suite 1350
San Diego, CA 92101
Telephone: (619) 235-5306
Facsimile: (815) 377-8419

EMGE & ASSOCIATES
DEREK J. EMGE, SBN: 161105
225 Broadway, Suite 1350
San Diego, CA 92101
Telephone: (619) 595-1400
Facsimile: (619) 595-1480

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ANTONIO S. HINOJOS, individually, and DARREN DROUIN and CHERYL LONG, individually and On Behalf of All Others Similarly Situated,

Plaintiffs,

v.

KOHL'S CORP., a Wisconsin Corporation; and KOHL'S DEPARTMENT STORES, INC., a Delaware Corporation,

Defendants.

CASE NO. CV10 7590 ODW(AGRx)

**PLAINTIFFS' REDACTED REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

DATE: January 27, 2014
TIME: 1:30 p.m.
JUDGE: Honorable Otis D. Wright II
CTRM: 11

## TABLE OF CONTENTS

I. COMMON QUESTIONS EXIST AND PREDOMINATE ........................... 1

II. THE FAL PRESENTS COMMON QUESTIONS THAT PREDOMINATE ........................... 2

III. COMMON QUESTIONS PREDOMINATE UNDER THE UCL ................. 4

IV. COMMON QUESTIONS PREDOMINATE UNDER THE CLRA .............. 5

V. INDIVIDUAL ISSUES RELATED TO REMEDIES DO NOT PREDOMINATE ........................... 8

VI. PLAINTIFFS HAVE TYPICAL CLAIMS AND ARE ADEQUATE REPRESENTATIVES ........................... 10

# TABLE OF AUTHORITIES

**CASES**

*Allen v. Similasan Corp.*,
2013 WL 2120825 (S.D. Cal. May 14, 2013) .......... 9, 11

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
133 S. Ct. 1184 (2013) .......... 2, 5

*Astiana v. Kashi Co.*,
291 F.R.D. 493 (S.D. Cal. 2013) .......... 9, 10

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*,
258 F.3d 578 (7th Cir. 2001) .......... 4, 5

*Barrer v. Chase Bank USA, N.A.*,
566 F.3d 883 (9th Cir. 2009) .......... 4

*Brazil v. Dell Inc.*,
2010 WL 5387831 (N.D. Cal. Dec. 21, 2010) .......... *passim*

*Brazil v. Dell, Inc.*,
585 F. Supp. 2d 1158 .......... 3

*Brown v. Hain Celestial Group, Inc.*,
913 F. Supp. 2d 881 (N.D. Cal. 2012) .......... 11

*Bruno v. Quten Research Inst., LLC*,
280 F.R.D. 524 (C.D. Cal. 2011) .......... 1, 11

*Cardenas v. NBTY, Inc.*,
870 F. Supp. 2d 984 (E.D. Cal. 2012) .......... 11

*Chavez v. Blue Sky Natural Beverage Co.*,
268 F.R.D. 365 (N.D. Cal. 2010) .......... 8

*Colgan v. Leatherman Tool Grp.*,
135 Cal. App. 4th 663 (2006) .......... 1, 6, 8

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013) .......... 8

*Cortez v. Purolator Air Filtration Products Company*,
23 Cal.4th 163 (2000) .......... 9

*Forcellati v. Hyland's, Inc.*,
876 F. Supp. 2d 1155 (C.D. Cal. 2012) ........ 11

*Gattuso v. Harte-Hanks Shoppers, Inc.*,
42 Cal. 4th 554 (2007) ........ 3

*Guido v. L'Oreal, USA, Inc.*,
2013 WL 3353857 (C.D. Cal. July 1, 2013) ........ 1

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (2013) ........ 6

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
2006 WL 1530166 (N.D. Cal. June 5, 2006) ........ 11

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ........ 11

*Jacobs v. Levin*,
58 Cal. App. 2d Supp. 913 (1943) ........ 9

*Johns v. Bayer Corp.*,
2012 WL 1520030 (S.D. Cal. April 30, 2012) ........ 9, 10

*Johns v. Bayer Corp.*,
280 F.R.D. 551 (S.D. Cal. 2012) ........ 6

*Klein v. Chevron U.S.A., Inc.*,
202 Cal. App. 4th 1342 (2012) ........ 1

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ........ 10

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) ........ 2, 8

*Leyva v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013) ........ 8

*Madrid v. Perot Sys. Corp.*,
130 Cal. App. 4th 330 (2005) ........ 10

*Mahfood v. QVC, Inc.*
2008 WL 5381088 (C.D. Cal. Sept. 22, 2008) ........ 3

*Marcus v. BMW of North America*, LLC, 687 F.3d 583 (3d Cir. 2012) ........ 11

*Mass. Mutual Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282 (2002) ........ 1

*McBride v. Boughton*, 123 Cal. App. 4th 379 (2004) ........ 9

*Negret v. Allianze Life Ins. Co. of North America*, 287 F.R.D. 590 (C.D. Cal. 2012) ........ 12

*Ogden v. Bumble Bee Foods*, 2014 WL 27527 (N.D. Cal. Jan. 2, 2014) ........ 12

*People v. Superior Ct.* (“*Jayhill*”), 9 Cal. 3d 283 (1973) ........ 9

*Silicon Image, Inc. v. Analogix Semiconductor*, 642 F. Supp. 2d 957 (N.D. Cal. 2008) ........ 6

*State ex. rel. Woodard v. May Dep’t Stores Co.*, No. 89 CV 9274, 1990 WL 322653 ........ 4, 5

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) ........ 1, 6

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012) ........ 6

*Thurston v. Bear Naked, Inc.*, 2013 WL 5664985 (S.D. Cal. July 30, 2013) ........ 9

*Trazo v. Nestle USA, Inc.*, 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) ........ 10

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ........ 2

*Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008) ........ 1, 8

*Zeisel v. Diamond Foods, Inc.*, 2011 WL 221113 (N.D. Cal. June 7, 2011) ........ 10

**STATUTES, RULES & REGULATIONS**

16 U.S.C.
§ 231.1 .......... 3

Federal Rules of Civil Procedure
Rule 23 .......... 11

California Business & Professions Code
§ 17501 .......... 2, 3

**SECONDARY AUTHORITIES**

Restatement (First) of Restitution (2010)
§ 142 .......... 9

# I. COMMON QUESTIONS EXIST AND PREDOMINATE

This case is materially indistinguishable from *Brazil v. Dell Inc.*, 2010 WL 5387831 (N.D. Cal. Dec. 21, 2010), and it should be certified for the same reasons. Kohl's does not dispute numerosity, ascertainability and adequacy of counsel. Common issues predominate because Plaintiffs' claims "rely on the same objective test, that is, whether 'members of the public are likely to be deceived.'" *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 532 (C.D. Cal. 2011) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) ("*Tobacco II*")). This is based on an "ordinary consumer acting reasonably under the circumstances . . . who is not versed in the art of inspecting and judging a product." *Colgan v. Leatherman Tool Grp.*, 135 Cal. App. 4th 663, 682 (2006). Because the test "has an objective focus, it is amenable to resolution through common evidence, not individual inquiries." *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857, at *11 (C.D. Cal. July 1, 2013).

Kohl's ignores this authority and argues that Plaintiffs must prove: 1) "the falsity" of its "regular" prices; 2) causation; and 3) entitlement to restitution. Opposition at 10. The Ninth Circuit has consistently held that *none of this is true*. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011).

Under Plaintiffs' claims, "advertising need not be actually false, as long as it is misleading or 'has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)); *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1380 (2012) ("A perfectly true statement couched in such a manner that it is likely to mislead or deceive . . . is actionable under the UCL.").

Under the UCL and FAL, "only the named plaintiffs are required to establish reliance and causation, not each class member. Individualized issues therefore will not predominate over questions common to the class, because this form of individualized proof is not required." *Guido*, 2013 WL 3353857, at *11; *Mass. Mutual Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1289 (2002) (same). Nor

must Plaintiffs demonstrate an entitlement to restitution because "[i]njunctions are 'the primary form of relief available under the UCL . . .,' while restitution is a type of 'ancillary relief.'" *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 337 (2011) (quoting *Tobacco II*, 46 Cal. 4th at 319)).[1]

## II. THE FAL PRESENTS COMMON QUESTIONS THAT PREDOMINATE

The FAL asks a single predominant question – do Kohl's "regular" or "original" prices equal the "prevailing market price" during the preceding 90 days? Cal. Bus. & Prof. Code § 17501. Plaintiffs contend that Kohl's *uniformly* violates this statute because its "regular" and "original" prices *always* exceed the prevailing market price during the preceding 90 days. Plaintiffs' expert will execute one systematic "stroke" that will analyze all of the relevant transactions in an identical manner. Since the class will "prevail or fail in unison" on this claim, common questions predominate. *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1191 (2013). The claim and evidence in this case stand in direct contrast to *Dukes*, where the plaintiffs' expert could *not* perform a statistical analysis to demonstrate classwide liability. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Crucially, Kohl's *admits* that its pricing practices will "virtually always result in the 'original' or 'regular' price being higher than the 'prevailing market price.'" Opposition at 11, n5.[2] Unable to avoid this reality, Kohl's argues that Plaintiffs must calculate the prevailing market price based on the prices of *different* products sold by its competitors. This argument is nonsensical and was expressly rejected in *Brazil*, which held that UCL, FAL and CLRA claims were all "susceptible to common proof in the form of Dell's pricing histories, as well as through [its]

[1] This case can be certified for injunctive relief or liability only. Opening Brief at 20-22.

[2] Kohl's would certainly present an example of a regular price equaling the prevailing market price if it could do so. Its failure (and apparent inability) to do so speaks volumes.

pricing policies." 2010 WL 5387831, at *5. The same evidence can be used here.[3]

Kohl's misleadingly cites the "summary" of an Attorney General Opinion but ignores its text which explains that when a dealer claims that a couch "was formerly selling for $100 but is now selling for $50," the former price is false unless it "actually coincides with the 'prevailing market price' of *the couch* within the next preceding three months. . . ." 57 Op. Atty' Gen. at 129. Simply put, the "'prevailing market price' . . . means the actual selling price of *the article* on the open market." *Id*. (emphasis added). There is no mention of "similar" products in this context.[4]

The Court's "overriding purpose" is "to give the statute a *reasonable* construction conforming to [the Legislature's] intent . . . ." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 567 (2007) (emphasis in original). It is *only* reasonable to determine the prevailing market price of goods sold "only at Kohl's" based on its actual sales data. Kohl's has data for thousands of transactions involving *identical* products and that data is the best evidence to determine the prevailing market price because no product is more "similar" than one that is *identical*.[5]

It is irrelevant what Kohl's intends for its "regular" or "original" prices to mean. The only question is what a reasonable consumer understands those terms to mean. The FTC Guidelines consider them representations of the seller's own former price (16 U.S.C. 231.1.), and even Kohl's admits that its "normal comparative price advertising is to be distinguished from comparison price claims

---

[3] Kohl's is *wrong* that "*Brazil* did not even involve a section 17501 claim." Opposition at 14. The complaint in that case explicitly alleges a claim under section 17501. Request for Judicial Notice, Ex. 1, at ¶¶ 19, 157, 160. *See* also *Brazil v. Dell, Inc.*, 585 F. Supp. 2d 1158, 1163 ("plaintiffs' allegations regarding 'Dell's deceptive advertising' arise under § 17501 . . ."). *Mahfood v. QVC, Inc.* is distinguishable because it involved claims of a "Retail Value" rather than the seller's own former price. 2008 WL 5381088, at *1 (C.D. Cal. Sept. 22, 2008). *Brazil*, 2010 WL 5387981, at *5 (distinguishing *Mahfood*).

[4] The 1984 Report of Attorney General merely highlights confusion with the FAL. It was not intended to guide courts in their interpretation of the FAL and should not be used for that purpose.

[5] There is no need to perform multiple analyses based on different localities. Kohl's sets prices at its corporate headquarters, and its prices are the same regardless of locality.

that expressly refer to a competitor's price." Opposition at 4, n2.[6] The "disclosures" that Kohl's relies on are vague, not displayed in stores, and either buried 55 pages deep in print advertising or several pages into an obscure section of its website. They are not conspicuous. *Barrer v. Chase Bank USA, N.A.*, 566 F.3d 883, 892 (9th Cir. 2009) (a conspicuous disclosure is "displayed or presented" such that "a reasonable person against which it is to operate ought to have noticed it.)."[7]

## III. COMMON QUESTIONS PREDOMINATE UNDER THE UCL

Kohl's argues that a UCL claim cannot be predicated solely on FTC "guidelines," but Plaintiffs' Second Amended Complaint incorporates both the FTCA *and* its guidelines which provides a proper legal basis. Dkt. No. 92, ¶ 14.

This claim raises two inquiries: 1) are products offered at the regular price for a reasonably substantial period of time; and 2) does Kohl's have a bona fide intention of selling a reasonable quantity of products at the regular prices? *State ex. rel. Woodard v. May Dep't Stores Co.*, No. 89 CV 9274, 1990 WL 322653, at *10 ("*Woodard*"). The first question can be answered by Kohl's company-wide "establishing period."[8] The second question (Kohl's intent) can be answered by its sales data. *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 258 F.3d 578, 580 (7th Cir. 2001) ("*Finlay*") (3% of sales at "regular" price shows that there was no "good faith . . . intent to sell [products] at the regular price."); *Woodard*, 1990 WL 322653, at *10 (based on the defendants' sales history, it was clear that the defendant "knew that no or very few items . . . would sell at the inflated 'original'

---

[6] Asked what "original price" means, focus group participants said: "It means retail price and that is the initial thing that they said it was going to go for, retail." "That's what they think they're going to get from it." "It means it's the newest item that just came out and it's not going to get marked down for a while." ". . . if you wait, you'll get it on sale. . . ." Ex. I at 32.

[7] Kohl's internal and "highly confidential" Pricing Guidelines are obviously irrelevant to this issue because consumers are not privy to them.

[8] Kohl's argues that it "may" offer products at the regular price for longer than its minimum establishment period, but it fails to show that this actually ever happens. The only evidence is that, for many products, [redacted] –Opening Brief at 4 (citing Ex. E).

price). The exact same analysis can be used here.

The "unfair" and "fraudulent" prongs of the UCL ask whether Kohl's "regular" or "original" prices are "likely to deceive?" If only a tiny fraction of products sell at the "regular" or "original" price, those prices may be considered "false" and "fraudulent." *Finlay*, 258 F.3d at 580 (price tags were "false" and "fraudulent" when only 3% of products sold at regular price). These claims are "susceptible to common proof in the form of [Kohl's] pricing histories, as well as through [its] pricing policies." *Brazil*, 2010 WL 5387831, at *5.

While Kohl's hypothesizes that the statistics might differ between its product lines, it cannot show that there would be any statistically *significant* difference because its "regular" prices will "virtually always" be higher than the actual selling price. Opposition at 11, n.5. Regardless, Plaintiffs should be given the chance to test the data and see if the class claims will "prevail or fail in unison." *Amgen Inc.*, 133 S. Ct. at 1191.

## IV. COMMON QUESTIONS PREDOMINATE UNDER THE CLRA

Plaintiffs intend to prove liability under the CLRA by demonstrating that: 1) Kohl's "regular" and "original" prices are *never* used for a reasonable period of time (if ever); and 2) a reasonable number of sales do not occur at those prices. This is the same evidence offered in *Brazil*, and the same used to establish liability under an *identical* Colorado statute in *Woodard*. 1990 WL 322653, at *10.

The argument that different products might have different percentages of sales at the regular prices should be rejected for the reasons discussed above. This case does not involve "hundreds of thousands of different alleged misrepresentations." Opposition at 19. It involves only two: "original" and "regular" prices that are at least 30% greater than a purported "sale" price. There is no reason to distinguish these misrepresentations based on different product types.

Kohl's also makes a misguided argument concerning causation. Causation under the CLRA is satisfied when the entire class is exposed to material

misrepresentations. *Stearns*, 655 F.3d at 1022. There can be no dispute that false price comparisons are material. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (2013) (the "legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination.").[9]

Undeterred, Kohl's argues, through its expert, that some consumers "understand" or "are skeptical" of Kohl's "regular" prices. But these arguments concern liability, not an appropriate basis to deny class certification. "Defendant's position appears to be simply that this Court should deny class certification because Plaintiff . . . will lose on the merits, a position which is contrary to well-established precedent." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 487 (C.D. Cal. 2012) (citing *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1321 (9th Cir. 1982) ("[T]he class representative need not demonstrate a likelihood of success on the merits in order to maintain a class action.") *vacated on other grounds* 459 U.S. 810 (1982)).[10] Mr. Stewart's opinions are also extremely misleading. He fails to disclose that *most* consumers *do believe* Kohl's regular prices, and *most do believe* that they save money by shopping at Kohl's.[11]

Mr. Stewart also misleadingly cherry picks statements from his focus groups. In fact, a *majority* of participants indicated that they *do believe* Kohl's "original" prices

---

[9] Kohl's authority primarily deals with the wholly distinct requirement that most class members be *exposed* to a misrepresentation. Opposition at 17-20. Here, there is no dispute that class members were exposed to Kohl's price comparisons, which makes that authority irrelevant. *Johns v. Bayer Corp.*, 280 F.R.D. 551, 558 (S.D. Cal. 2012) (distinguishing cases on this basis).

[10] Plaintiffs do not need to present contrary expert testimony. *Colgan*, 135 Cal. App. 4th at 681-82; *Silicon Image, Inc. v. Analogix Semiconductor*, 642 F. Supp. 2d 957, 968 (N.D. Cal. 2008).



[11] For example, the Spring 2013 Survey found that (Stewart Decl. ¶ 25), but " Ex. J at 95:14-25. In another survey, (Stewart Decl., ¶ 26) but ." Ex. J at 99:16-19. In the Summer 2013 Survey, Stewart Decl. at ¶ 27.

(Ex. J at 109:18-110:1), and in one of the two focus groups *nobody* stated that they ignore "original" prices. *Id*. at 112:2-9. To the contrary, when asked if they see both an original price and sale price, they answered: "Yes." "Yeah." "It's helpful." "Oh my gosh, this is like $150.00 and look at it now. It's $3.50, oh my God. . . ." Ex. I at 30. When asked if they "ever [do] *not* look at the original price," (emphasis added), they answered: "Always." "Oh no, we always look at the original." and "Yeah, I'll look at the original price." *Id*. at 35; *see also* Ex. H at 9 (stating that she looks at the "original price, and then you look at what the sale price is . . ."). As one participant explained, "I'm looking at every price. Original price, sale price, clearance price. And I gather information." Ex. I at 35.

When asked if price comparisons influence their purchasing decision, one participant said: "I like to see something that priced really high and then if I think – . . . . 'Someone paid like $200.00 for this, but I'm going to get it for ____.' I love that." Ex. I at 34. Another responded: "I hate to say it, but . . . you look at the original price and the sale price and you always want to see 'Oh, is that $20.00 off,' . . . . Cause then, unfortunately, that does influence me. I'll go back to Kohl's and get my $20.00 [discount]. . . . It is a psychological thing. . . ." *Id.* at 36. Another responded "It probably influences me. . . . Just because I like to see how much I think I'm saving." Ex. H at 27. When asked how much the original and sale price influences them, one responded: "Definitely the bigger the difference, it'll influence me to buy it more than if it's just like five percent off or something." *Id.* at 33. Another stated: "I like seeing the savings, I think. I feel like I'm getting a really good deal then." *Id.* at 35.[12]

In the end, Mr. Stewart renders the wholly unremarkable opinion that there is no

[12] Even some who initially said they may not believe the original price clarified their response: "It's not that I don't necessarily believe the original price, I just wouldn't pay the original price. Does that make sense?" Ex. H at 32. *See id.* at 33 (Female 2: "It's not like I don't believe it, it's just that that's what they've determined the price is, so that's what it is." Female 6: "And I think I look at it as this is what they hope to sell it for.").

"uniform consumer response" to "regular" prices." Opposition at 19-20. That is irrelevant because "plaintiffs need not establish that each and every class member based his or her decision on the represented discounts." *Brazil*, 2010 WL 5387831, at *5. Rather, Plaintiffs' claims are subject to the purely objective "reasonable consumer" test under which they must show only that members of the public are "likely to be deceived." *Williams*, 552 F.3d at 938. Even Mr. Stewart admits that "the issue in most deceptive advertising cases is not whether everyone was deceived," but rather "is there likelihood that some significant number might take a message away . . . that's incorrect and that would . . . influence their behavior in some way." Ex. J at 9:14-10:3. And, he admits that it is "not unusual" to find variation in survey research (id. at 19:8-9), but "despite . . . variability . . . you can still . . . arrive at a conclusion about the likelihood that people would carry away a deceptive message." *Id.* at 6:11-22.

Finally, a class action would not interfere with Kohl's presenting rebuttal evidence or otherwise violate the Rules Enabling Act. Kohl's has not shown a lack of causation as to a significant number of class members and therefore has not shown that individual issues are likely *to predominate* at trial under the CLRA.

## V. INDIVIDUAL ISSUES RELATED TO REMEDIES DO NOT PREDOMINATE

The Ninth Circuit has confirmed that, even after *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), the "amount of damages is invariably an individual question and does not defeat class action treatment." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013). Plaintiffs must only show that they have "a likely method for determining class damages, though it is not necessary to show that this method will work with certainty at this time." *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010).

The Court maintains "considerable discretion" to determine whether Plaintiffs are entitled to an equitable remedy, including restitution. *Kwikset*, 51 Cal. 4th at 330 n.15; *Colgan*, 135 Cal. App. 4th at 695 (the "courts' discretion is very broad").

Plaintiffs have proposed three alternative measures of calculating restitution, and Kohl's does not seriously dispute that Plaintiffs' expert can make the appropriate calculations. Instead, it argues that none amount to restitution. Kohl's is incorrect. No case "suggest[s] that the difference in price paid and value received is the *only* proper measure of restitution." *Johns v. Bayer Corp.*, 2012 WL 1520030, at *4-*5 (S.D. Cal. April 30, 2012) (emphasis in original).

Restitution is "synonymous with" unjust enrichment. *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004). Plaintiffs may obtain restitution if Kohl's unlawfully "enriched itself at the expense of unwitting consumers." *Allen v. Similasan Corp*., 2013 WL 2120825, at *6 (S.D. Cal. May 14, 2013).

A complete refund was the restitutionary remedy approved of in *People v. Superior Ct.* ("*Jayhill*"), 9 Cal. 3d 283, 286 (1973). Other courts have condoned this same remedy. *E.g., Jacobs v. Levin*, 58 Cal. App. 2d Supp. 913, 915-18 (1943) (cited in *Kwikset*, 51 Cal. 4th 310, 334 (2011)); *Cortez v. Purolator Air Filtration Prods. Co*, 23 Cal. 4th 163, 177 (2000) (an appropriate form of restitution is "an order that customers who were victims of a fraudulent sales presentation be afforded the opportunity to rescind an ensuing contract and obtain a refund."). This would not provide Plaintiffs with an improper "windfall" because Plaintiffs would have to return the products before obtaining a refund. Since Kohl's acted deceptively, it has no basis to complain that the returned items have been used or destroyed. Restatement (First) of Restitution § 142 (2010). Moreover, the Court should not be concerned with restoring Kohl's to the status quo ante because "[t]he status quo ante to be achieved by the restitution order [is] to again place the *victim* in possession of that money." *Cortez*, 23 Cal. 4th at 177.

Restitution also may be measured as the "difference between [Plaintiffs'] expected and received value." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 506 (S.D. Cal. 2013); *Thurston v. Bear Naked, Inc.*, 2013 WL 5664985, *10 (S.D. Cal. July 30, 2013). Plaintiffs' expert will measure precisely the amount that Kohl's received

from its deceptive practice by calculating the difference between the amount that class members paid as a result of a discount based on a *deceptive* "regular" or "original" price, and the amount that they *would have paid* had Kohl's offered the same discount based on a *truthful* "regular" or "original" price. This theory is eminently equitable because it takes into account both the value of what Plaintiffs received and also the *higher* value promised but not provided by Kohl's.

Restitution may also be measured by the gross profits that Kohl's obtained from class members through its deceptive practice. *E.g., Zeisel v. Diamond Foods, Inc.*, 2011 WL 221113, at *10 (N.D. Cal. June 7, 2011) (an acceptable measure of restitution is the "profits [defendant] obtained from [allegedly deceptive] transactions"); *Astiana*, 291 F.R.D. at 506 (restitution based upon "sales, profits and prices" is a "viable theory of how to calculate [restitution]."). *See also Johns*, 2012 WL 1520030, at *4-*5 (allowing discovery of the defendants' cost basis to support restitution based on profits). This would not award "non-restitutionary disgorgement" because "[t]he money to be disgorged . . . was taken from the victims (i.e., restitutionary disgorgement), not money obtained from third parties (nonrestitutionary disgorgement)." *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 330, 462 (2005)); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1145 (2003) (Plaintiffs may "recover profits unfairly obtained to the extent that these profits represent monies given to the defendant [by Plaintiffs].").

## VI. PLAINTIFFS HAVE TYPICAL CLAIMS AND ARE ADEQUATE REPRESENTATIVES

Relying on two food misbranding cases, Kohl's argues that Plaintiffs are atypical (and lack standing) because they did not purchase products that are "substantially similar" to the products purchased by other class members. *See generally Trazo v. Nestle USA, Inc.*, 2013 WL 4083218, at *12 (N.D. Cal. Aug. 9, 2013) ("*[in] food misbranding cases*, courts have applied the 'sufficient similarity'

test to determine both typicality and standing.") (emphasis added).[13]

This is not a food misbranding case, and the "substantially similar product" test is inapplicable. *Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012). The appropriate inquiry is "whether the alleged misrepresentations are sufficiently similar across product lines." *Id., see also Marcus v. BMW of North America*, LLC, 687 F.3d 583, 599 (3d Cir. 2012) ("[A] named plaintiff that purchases only one type of product satisfies the typicality requirement if the alleged misrepresentations or omissions apply uniformly across the different product types."); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 1530166, at *4 (N.D. Cal. June 5, 2006) (same).

Here, the alleged misrepresentations apply uniformly across all class products. Plaintiff Long bought a coat, while Plaintiff Drouin purchased a variety of different products, including candles, shoes and shirts, yet their claims are typical because they are reasonably co-extensive with each other as well as with the claims of other class members. *Brazil*, 2010 WL 5387831, at *3-*4 (plaintiffs who purchased only two products were typical and adequate to represent class of purchasers of *all* Dell products based on alleged former price misrepresentations).

Kohl's also argues that Plaintiffs cannot "establish causation" making them subject to "unique defense[s] that [are] likely to become a major focus of the litigation." Opposition at 25 (citing cases and deposition testimony). This is an improper merits-based argument that is not supported by evidence. Causation is demonstrated by showing that in all reasonable probability the plaintiff would not have engaged in the injury-producing conduct absent the defendant's misrepresentation. *Tobaco II*, 46 Cal. 4th at 326. When asked a series of incomplete hypothetical questions concerning whether she would have purchased

---

[13] Numerous courts have agreed that these issues are more appropriately decided in the context of Rule 23 rather than on standing grounds. *E.g. Bruno*, 280 F.R.D. at 530; *Allen*, 2013 WL 2120825, at *4; *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012); *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012).

the coat if it just had an $88 price tag, Ms. Long answered "I'm not sure" and "I don't know." That is far from stating that she would still have purchased the coat if it had not been advertised with a regular price tag of $220. When asked *that* question, she testified unequivocally "[o]n the day that I purchased it, no." Ex. K at 240:20-241:3. *See also* Long Decl., ¶¶ 3-4 (declaring that she "would not have purchased the coat" had she known that it "wasn't regularly sold at $220.").

Mr. Drouin consistently testified that he would not have purchased products absent Kohl's false price comparisons. *E.g.*, Ex. L at 89:18-90:22 (he buys things at Kohl's he doesn't need solely because of the discount); 181:19-184:7 ("had these items in my closet not been at a huge discount, I would not have purchased them."); 230:11-231:9 (would not have purchased T-shirt if it were not advertised with higher comparative price); 256:8-257:4 (would not have purchased any of the items at issue had he known that the regular price was false); *see also* Drouin Decl., ¶¶ 3-4 (same).[14]

Finally, Kohl's has not shown that its purported defenses would be *unique* to Plaintiffs because it raises the same "defenses" against all class members. *Negret v. Allianze Life Ins. Co. of North America*, 287 F.R.D. 590, 604 (C.D. Cal. 2012). Kohl's also has not shown that these defenses would become a distracting focus of the litigation. At most, they would be resolved with a couple of questions to each Plaintiff. This is not grounds to find atypicality or inadequacy.

DATED: January 13 2014

STANLEY • IOLA, LLP
MATTHEW J. ZEVIN

*/s/ Matthew J. Zevin*
MATTHEW J. ZEVIN

[14] Mr. Drouin testified that "maybe" he would buy a hypothetical candle that did not have a comparative price, but ultimately his decision "would really depend on the circumstances around that case." Ex. L. at 231: 25-234:24. This testimony does not even relate to the products that he bought at Kohl's and cannot show a lack of causation as to *those* products. Also, his declaration and testimony is sufficient evidence that he is a class member, which Kohl's does not dispute. *Ogden v. Bumble Bee Foods*, Inc. 2014 WL 27527, at *1 n.3 (N.D. Cal. Jan. 2, 2014).

225 Broadway, Suite 1350
San Diego, CA 92101
Telephone: (619) 235-5306
Facsimile: (815) 377-8419

EMGE & ASSOCIATES
DEREK J. EMGE, SBN: 161105
225 Broadway, Suite 1350
San Diego, CA 92101
Telephone: (619) 595-1400
Facsimile: (619) 595-1480

Attorneys for Plaintiffs